ANDREW J. MURPHY, SR., ELMER J. KEITEL, SR., and HARRY P. DRIS-
LER, Members of the UNEMPLOYMENT COMPENSATION COMMISSION
OF MISSOURI, Appellants, v. J. W. MENKE.—No. 38124.—165 S.
W. (2d) 653.

Division One, November 10, 1942.

*George A. Rozier,* Chief Counsel, and *Edward D. Summers,* Assist-
ant Counsel for appellants; *Harry G. Waltner, Jr.,* of counsel.

146

*Wilder Lucas* for respondent.

GANTT, J.—Action under the Unemployment Compensation Law to collect from defendant employer Menke a tax of $135.39 as contribution to the unemployment fund. The parties waived a jury. On hearing the evidence, the trial court ruled that defendant was not subject to the provisions of said law. Judgment accordingly and plaintiff members of the Unemployment Compensation Commission appealed. The facts follow:

Menke's home is in Cincinnati, Ohio. He is the owner of the towboat Winona and the showboat Goldenrod. The Goldenrod is not self-propelled. It is attached to the Winona. At least eight of the employees on the boats are actors who furnish entertainment to patrons of the showboat. The other employees are deck hands, engineer, cook and helper. The actors are paid weekly and sleep on the showboat. All the employees are served with meals on the Winona. In naviga-

tion the actors, "like everybody else," assist the deck hands during a storm on the river.

Menke conducted the Goldenrod show at Pittsburgh two years, Nashville one year and Memphis one year. The show is patronized by citizens of the city. In October, 1937, he located in St. Louis and tied the boats to the wharf at the foot of Locust Street. At that time the city claimed the show was under the jurisdiction of the theatre code of the city. The federal court enjoined the city from interfering with the show and Menke continued to conduct the same at that location. However, for one week in 1938, he conducted the show at Swartztrauber Park in Illinois and then returned to the Locust Street location in St. Louis.

Menke testified that both boats were registered at the custom house in St. Louis as a vessel under the laws of the United States, and at that time he was enrolled as captain of the same; that during the time of his location in St. Louis he was sued in admiralty for wages earned on the vessel; that libels were threatened against him both in equity and in admiralty; that the actors are admitted to the marine hospital in St. Louis; that he thinks one actor was admitted to said hospital; that the hospital recognized the actors as seamen; that ▮ he registered as a citizen of the city of St. Louis and voted in said city at the presidential election, and that he intends to move the show business from St. Louis when a favorable opportunity presents itself. The facts set forth in the above statement (including the testimony of Menke) are not in dispute.

The Federal Social Security Act of August 14, 1935, exempts from the provisions of the act "service performed as an officer or member of the crew of a vessel on the navigable waters of the United States." Our Unemployment Compensation Law, of June 17, 1937, makes the same exemption. [Par. (6), No. (3) of subsection (i), Sec. 9423, R. S. 1939.]

The parties proceed on the theory that the towboat Winona and the showboat Goldenrod may be considered a vessel within the meaning of the exemption. It follows that the only question for determination is whether or not the actors are members of the crew of the vessel within the meaning of the Unemployment Compensation Law.

An explanation in Congress of the exemption in the Federal Social Security Act follows:

"Services performed by an officer or a member of a crew on a vessel, documented under the laws of the United States or any foreign country, are also exempt from the taxes imposed by this title. The administrative difficulty of following the wages of officers and seamen of crews was regarded as almost unsurmountable. For instance, unless this exemption were granted, it would be necessary to keep track of the wages of Chinese coolies working on American ships." [Internal Revenue Cumulative Bulletin 1939-2, p. 607.]

In other words, the members of the crew would be in navigation, and for that reason it would be difficult to follow wages.

The Internal Revenue Department also gave attention to the exemption and construes the same as follows:

"The expression 'officers and members of the crew' includes the master or officer in charge of the vessel, however designated, and every individual, subject to his authority, serving on board and contributing in any way to the operation and welfare of the vessel. The exception extends, for example, to services rendered by the master, mates, pilots, pursers, surgeons, stewards, engineers, firemen, cooks, clerks, carpenters, deck hands, porters and chambermaids, and by seal hunters and fishermen on sealing and fishing vessels." [Internal Revenue Regulation 90, p. 8.]

Thus it appears that said department limits the words "members of the crew" to persons contributing "to the operation and welfare of the vessel." Of course, a vessel in "operation" is a vessel in navigation.

If we assume that the words "member of the crew", in the exemption, are used in the sense of "seamen", we find that word defined as follows: "In a broad sense, a seaman is a mariner of any degree, one who lives his life upon the sea. It is enough that what he does affects 'the operation and welfare of the ship when she is upon a voyage.'" [Warner v. Goltra, 293 U. S. 155.]

In another case the court did not attempt to define the words "member of the crew." It cited DeWald v. B. & O. R. Co. (4 Cir.), 71 Fed. (2d) 810, and Wandtke v. Anderson (9 Cir.), 74 Fed. (2d) 381, as giving the question consideration and then stated with reference to the same as follows:

"There is implied a definite and permanent connection with the vessel, an obligation to forward her enterprise and to protect her in emergency, and a right to look to her and her earnings for wages. If she has a master, there is subjection to his commands. The nature of the work done is not determinative. Engineers and cooks as well as sailors are included." [Maryland Casualty Co. v. Lawson, 94 Fed. (2d) 191.]

The actors in question do not look to the earnings of the vessel for wages. The vessel, as such, has no earnings.

Another definition of "seaman" follows:

"Definitions, schedule, and tables. In the construction of this chapter, every person having the command of any vessel belonging to any citizen of the United States shall be deemed to be the 'master' thereof; and every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same shall be deemed and taken to be a 'seaman'; and the term 'vessel' shall be understood to comprehend every description of vessel navigating on any sea or channel, lake or river, to which the provisions of this chap-

ter may be applicable . . . " [Sec. 713, Chap. 18 in Title 46 of U. S. C. A.]

This chapter deals with merchant seamen under the title "shipping." Of course, it has reference to seamen or members of a crew on a vessel in navigation.

Other cases giving consideration to the question follows: The Sea Lark, 14 Fed. (2d) 201; Woods Bros. Const. Co. v. Iowa Unemployment Compensation Comm. et al., 296 N. W. 345; The J. S. Warden, 175 Fed. 314; The Baron Napier, 249 Fed. 126; Gale v. Union Bag & Paper Corp., 116 Fed. (2d) 27; Puget Sound Bridge & D. Co. v. State Unemployment Comp. Comm., 126 Pac. (2d) 37; Berwind-White Coal Mining Co. v. Rothensies, 45 Fed. Supp. 55.

The Sea Lark case was in admiralty seeking a lien for wages due musicians in service on a vessel navigating in Puget Sound and Lake Washington. They furnished entertainment for the passengers. It was ruled that the musicians were seamen and entitled to a lien on the vessel for wages.

The Woods Bros. case was an action under the Unemployment Compensation Law of Iowa. In that case the employees fabricated floating lumber mats on a barge which moved from place to place in the river by manpower. The employees on the barge furnished the manpower to move the barge. In due course the mats, in sections, were unloaded into the river and forced to the bottom thereof by rocks placed on the floating mat. On the admission that the barge was a vessel, the court ruled that the employees on the barge were members of the crew of a vessel within the meaning of the exemption under consideration. In other words, the court ruled that the employees contributed to the operation and enterprise in which the vessel was engaged. In the instant case the record presents no such facts.

The Warden case was in admiralty and ruled that a bartender in service on a vessel was entitled to a lien for wages for the reason that his services were in furtherance of the purpose of the voyage. In other words, the vessel was in navigation.

The Napier case was in admiralty and ruled that a muleteer in charge of mules on the vessel in navigation was entitled to damages for injuries sustained while acting as a watchman under orders of the foreman. This vessel also was in navigation.

In the Gale case it was ruled as follows: "The word 'seaman' has a plain, ordinary meaning universally applied. Whether a person is a seaman depends upon the character of his duties. If they are maritime in character and rendered on a vessel in commerce, in navigable waters, he is a seaman."

The Puget Sound case is under the Unemployment Compensation Law of Oregon, and the Berwind case is under the Federal Social Security Act. In the Puget Sound case it was ruled as follows:

"In order that the services performed by an individual upon a vessel on navigable waters of the United States be excluded from coverage under the Unemployment Compensation Law, it must be shown that such services substantially tend to promote the welfare of the vessel as an agency of navigation. It is not sufficient only to show that such services are incidental to navigation. South Chicago Dock Co. v. Bassett, supra; DeWald v. Baltimore & Ohio R. Co., 4 Cir., 71 F. (2d) 810; Diomede v. Lowe, 2 Cir., 87 F. (2d) 296; Moore Dry Dock Co. v. Pillsbury, 9 Cir., 100 F. (2d) 245; Hawn v. American S. S. Co., 2 Cir., 107 Fed. (2d) 999; Shore Fishery v. Board of Review of U. E. Comm., 127 N. J. L. 87, 21 A. (2d) 634, 636; The Bound Brook, D. C., 146 F. 160; The Buena Ventura, D. C., 243 F. 797. See well-considered opinion of General Counsel for Unemployment Commission of South Carolina, State Series, Vol. 2, No. 1, U. C. I. S.—1002 S. C." The Berwind case cited with approval the rule as follows:

" 'The crew is usually referred to and is naturally and primarily thought of as those who are on board and aiding in the navigation without reference to the nature of the arrangement under which they are on board.' " Seneca Washed Gravel Corp. v. McManigal, 65 Fed. (2d) 279; The Bound Brook, D. C., 146 Fed. 160, 164; The Buena Ventura, D. C., 243 Fed. 797, 799.

Furthermore, it has been ruled that candy vendors, barbers, surgeons, engineers, firemen, cooks, clerks, carpenters, deck hands, porters, chambermaids and others in service on vessels in navigation, are ▮▮▮ seamen and members of the crew. It also has been ruled that seal hunters and fishermen on sealing and fishing vessels are seamen and members of the crew.

In the instant case the actors were not in service on a vessel in navigation. They are engaged in only incidental storm service in moving from a city to another city. The vessel carried neither passengers nor freight. It was not in river navigation for the improvement of the channel. All of the services rendered by the actors were for the entertainment of citizens of a city patronizing the show located in the city.

Furthermore, the suit against Menke in admiralty for wages, the federal injunction against the city from interfering with the show, the admission of an actor in the marine hospital, and the opinion of a clerk in the Internal Revenue Office do not solve the question.

It is not conceivable that the Congress or the legislature intended the words "member of a crew" to cover an actor on a vessel located in a city, who furnished entertainment for the citizens of a city patronizing a showboat located in said city.

The judgment should be reversed and the cause remanded with directions to enter judgment as prayed for in the petition. All concur except *Hays, J.*, absent.