TRIANON HOTEL COMPANY, Appellant, v. ELMER J. KEITEL, SR., ANDREW J. MURPHY, SR., HARRY P. DRISLER, Legal Representatives of the UNEMPLOYMENT COMPENSATION COMMISSION OF THE STATE OF MISSOURI, and JOHN LOUIS CHRISTIAN, Respondents.—No. 38312. —169 S. W. (2d) 891.

Division One, March 2, 1943.

Rehearing Denied, April 6, 1943.

*Arthur Miller, Alton Gumbiner, David L. Sheffrey* and *Roscoe C. Van Valkenburg* for appellant; *Miller, Gumbiner, Sheffrey & Van Valkenburgh* of counsel.

*George A. Rozier,* Chief Counsel, and *Mahlon Z. Eubank,* Assistant Counsel, for respondents; *Harry G. Waltner, Jr.,* of counsel.

1044

BRADLEY, C.—John Louis Christian made application to the Unemployment Compensation Commission for benefits. Trianon Hotel Company was the alleged employer. A claims deputy and a referee found for the claimant, Christian, and the hotel company appealed to the commission, which also found for the claimant. The hotel company took steps to have the matter reviewed in the circuit court, and the circuit court affirmed the finding of the commission. The hotel company appealed to this court.

The appellant hotel company operates the Muehlebach Hotel in Kansas City. The commission and claimant contend that claimant was an employee of the hotel company within the meaning of the unemployment compensation law, and entitled to benefits as such employee. The hotel company, on the other hand, contends that claimant was not its employee, but was the employee of one William Cook who, the hotel company says, bore the relation of independent contractor to it.

This court's jurisdiction of this appeal is not questioned in the briefs, but whether or not such question is raised, it is our duty to determine such question when it arises on the record. Murphy et al. v. Hurlbut Undertaking & Embalming Co., 346 Mo. 405, 142 S. W. (2d) 449; Perkins v. Burks et al. (Mo. Sup.), 61 S. W. (2d) 756; Rust Sash & Door Co. v. Gate City Bldg. Corp. et al., 342 Mo. 206, 114 S. W. (2d) 1023. Our rule 15 requires that an appellant's brief

contain "a concise statement of the grounds on which the jurisdiction of this court is invoked." In observance of this rule the hotel company, in the brief, says that jurisdiction of this appeal is in the supreme court and cites, as supporting, Sec. 9432A, Laws 1941, p. 621, and A. J. Meyer & Co. v. Unemployment Compensation Commission, 348 Mo. 147, 152 S. W. (2d) 184. Subdivision (b) of Sec. 9432A, among other things, provides that "an appeal (in an unemployment compensation case) may be taken from the decision of the circuit court or court of common pleas to the Supreme Court of this state in the same manner, but not inconsistent with the provisions of this law as is provided in civil cases." In the original unemployment compensation act, Laws 1937, p. 574, subdivision (i) of Sec. 11, the appeal provided for was "to the appellate court of this state" instead of "to the Supreme Court of this state", as it now appears in Sec. 9432A, supra.

The appellate jurisdiction of the supreme court, in all cases, is fixed by Sec. 12, Art. 6 of the Constitution, when read in connection with Sec. 5 of the Amendment of 1884. Sec. 12 of Art. 6 provides, among other things, that in all cases where "any State officer is a party", and in all cases "involving the construction of the revenue laws of this State", the appeal lies to the supreme court. And if the present appeal lies to the supreme court, it is because of one or both of the grounds mentioned.

Members of the Unemployment Compensation Commission were held to be state officers in Murphy et al. v. Hurlbut Undertaking & Embalming Co., supra; Murphy et al. v. Doniphan Telephone Company, 347 Mo. 372, 147 S. W. (2d) 616; A. J. Meyer & Co. v. Unemployment Compensation Commission, supra. In Shelley v. Commission For The Blind, 309 Mo. 612, 274 S. W. 688, it was held that members of the Commission For The Blind are state officers, and in State ex rel. Horton v. Clark et al., 320 Mo. 1190, 9 S. W. (2d) 635, it was held that members of ■■■ the State Board of Health are state officers. Jurisdiction of the appeal in the Shelley case and the Horton case was held to be in the supreme court because a state officer as such was a party. In the following cases, under the unemployment compensation law, the question of jurisdiction of the appeal was not considered: Murphy et al. v. Concordia Publishing Co., 348 Mo. 753, 155 S. W. (2d) 122; St. Louis Rose Company v. Unemployment Compensation Commission, 348 Mo. 1153, 159 S. W. (2d) 249, 250; S. S. Kresge Co. v. Unemployment Compensation Commission, 349 Mo. 590, 162 S. W. (2d) 839; Kellogg et al. v. Murphy et al., 349 Mo. 1165, 164 S. W. (2d) 285; Murphy et al. v. Menke, 350 Mo. 145, 165 S. W. (2d) 653, and Murphy et al. v. Midwest Mushroom Co., 350 Mo. 658, 168 S. W. (2d) 75.

The mere fact that members of the Unemployment Compensation Commission are state officers, does not necessarily determine the

question of appellate jurisdiction. It was held in State ex rel. Gehrs v. Public Service Commission, 338 Mo. 177, 90 S. W. (2d) 390, that *members* of the Public Service Commission were state officers, but that the *commission*, as such, was "a legal entity and quasi corporation . . . and exists as an entity distinct and apart from its members", and that the members of the commission were not necessary parties in an action to review orders of the commission. And it was held that an appeal involving the review of orders of the commission did not lie to the supreme court merely because the members of the commission were made parties. The ruling in the Gehrs case is clearly supported by Sec. 5587, R. S. 1939, Mo. R. S. A., Sec. 5587, which provides:

"The commission shall have an official seal bearing the following inscription: 'Public service commission of the state of Missouri.' The seal shall be affixed to all writs and authentications of copies of records and to such other instruments as the commission shall direct. All courts shall take judicial notice of said seal. The commission may sue, and be sued in its official name."

In State ex rel. Highway Commission v. Day et al., 327 Mo. 122, 35 S. W. (2d) 37, 1. c. 38, it is held that the State Highway Commission is "an artificial legal entity—a quasi public corporation, empowered as such to contract and to sue and be sued." To the same effect are Bush v. State Highway Commission, 329 Mo. 843, 46 S. W. (2d) 854, 1. c. 855; State ex rel. McDowell, Inc., v. Smith, 334 Mo. 653, 67 S. W. (2d) 50, 1. c. 56; Christeson v. State Highway Commission (Mo. Sup.), 40 S. W. (2d) 615, 1. c. 616; Manley et ux. v. State Highway Commission (Mo. App.), 82 S. W. (2d) 619; Klaber v. O'Malley (Mo. Sup.), 90 S. W. (2d) 397, 399; State ex rel. State Highway Commission v. Billings (Mo. Sup.), 123 S. W. (2d) 170. Likewise, the Workmen's Compensation Commission is a statutory entity, a quasi public corporation, authorized to sue and be sued. State ex rel. Goldman v. Missouri Workmen's Compensation Commission et al., 325 Mo. 153, 27 S. W. (2d) 1026. And in White v. State Social Security Commission, 345 Mo. 1046, 137 S. W. (2d) 569, it was held that the State Social Security Commission is an "entity and quasi public corporation." In all these cases where the *commission* is the *real party*, and not the members thereof, the appeal does not lie to the supreme court unless there is some ground other than that the members of the commission are state officers.

Sec. 9426(a), R. S. 1939, Mo. R. S. A., Sec. 9426(a), provides that the Unemployment Compensation Commission "shall have an official seal which shall be judicially noticed", but there is no statute making the Unemployment Compensation Commission a legal entity and quasi public corporation, and authorizing the *commission* as such to sue and be sued, as is the case with the Public Service Commission, the State Highway Commission, the Workmen's Compensation Com-

mission, and the State Social Security Commission. On the contrary, the only section of the unemployment compensation law saying anything about who shall sue is Sec. 9436(h), R. S. 1939, Mo. R. S. A., Sec. 9436(h), which provides: "If any employer defaults in the payment of contributions or interest thereon, the amount due shall be collected by civil action *in the name of the commissioners* administering this law as members of the commission" (italics ours). The original act, Laws 1937, p. 574, Sec. 15, provided that the action be "in the name of the commission", but was amended in 1939, Laws 1939, p. 892, Sec. 7(h). Sec. 9436(h) was amended in 1941, Laws 1941, p. 633, but subdivision (h) was not changed. Of course the legislature cannot fix the appellate jurisdiction of this court except as by the Constitution provided. ▆▆▆ That is made plain in the Gehrs case, supra [90 S. W. (2d) l. c. 391]. Sec. 3 of the Amendment of 1884 authorizes the legislature to increase or diminish the pecuniary limit of the jurisdiction of the courts of appeals. By this provision the legislature may determine "the amount in dispute" referred to in Sec. 12 of Art. 6. At present the amount is fixed at $7500. See Sec. 2078, R. S. 1939, Mo. R. S. A., Sec. 2078.

In the situation, we hold that the present appeal lies to the supreme court because state officers, members of the commission, are parties, within the meaning of Sec. 12, Art. 6 of the Constitution.

Since the appeal lies to the supreme court because a state officer as such is a party, it will not be necessary to determine whether the construction of the revenue law of this state is involved.

Having disposed of the question on jurisdiction, we now take up the case on its merits. The facts are as follows: On occasions, from 5 to 11 times a year, the hotel company serves meals at the municipal auditorium in Kansas City, and most of the waiters who serve on these occasions are obtained through William Cook, the alleged independent contractor. Claimant served as waiter on a few of these occasions and was obtained through Cook, who was the business agent of a local union. Only two witnesses testified, and these were Marvin P. Richmond, the hotel company's attorney, and Cook.

Cook testified that as business agent of the waiter's local union, he was called upon from time to time by the hotel company to supply waiters at the auditorium when the hotel company served meals there; that for each waiter at each separate service he received from the hotel company "$2.25 a night (dinner) and for lunch $2"; that he received whatever amount was coming to all the waiters he supplied in a lump sum and that out of this he paid each waiter $2.00 for dinner service and $1.75 for lunch service, and deducted $1.50 per month for union dues if the waiter's dues were delinquent, and that he got "25 cents on the dollar" for collecting dues; that two cents came "out (of the meal service pay) that goes to the government", and that he retained the balance. The items of pay mentiond con-

stitute all the pay that Cook receives for his service. Cook said that he had been business agent for the local union for three years. "Q. And how did you obtain that position? A. Long before the union I had been handling the colored boys in this town, seven years before that, and I have been handling all the colored waiters in Kansas City, and after the union come in town and taken the boys in and I understood the business so they just made me business representative. Q. Now, when you use the term 'handling' the boys what do you mean? A. I mean in all places where I have a contract, like the Muehlebach, or some place, and furnishing all the boys. I have been doing that for last ten or eleven years."

Cook further testified that he told "the men how to serve and where to serve"; called them "all in a group" and "lectured them"; explained "how the hotel wants it served"; that "the union has set rules", and that he would have the right "to take a man off a job if he wasn't conforming to those rules"; *that in taking a man off service for breach of rules he would be "enforcing the union rules and the hotel rules"*; that he considered himself as the employer of the waiters; that the number of waiters he has serving at the auditorium when the hotel company serves at the auditorium varies; that the number has been as high as 165 and low as 60; that the waiters he got to serve at the auditorium wouldn't know "anything about the Hotel Muehlebach"; that he had waiters working for him who thought they were "working for the auditorium."

As we understand, Cook and the hotel company entered into a written contract for each time he obtained waiters for service at the auditorium. One of these contracts is set out in the record and is as follows:

"Contract.

"April 15, 1940

"Agreement entered into between the Trianon Hotel Company, operators of the Hotel Muehlebach, Kansas City, Missouri, and William Cook, hereinafter called the contractor.

"The Trianon Hotel Company engages contractor to furnish sufficient waiters to serve the Rotary Club at the municipal auditorium, April 15, 1940, at 7:00 P. M.

"Contractor is to have complete charge of the waiters and is to instruct them as to their duties. Contractor is to be responsible for their actions and must see that their work is performed in a manner in keeping with the service and reputation of the Hotel Muehlebach. Contractor is to furnish the uniforms for the men. Contractor is to advise his men that they are not to receive or consume any food of the Trianon Hotel Company while they are engaged for the above party.

"As a contractor, Mr. Cook agrees to comply with all the rules and regulations of the social security act.

"As compensation for his services in connection with the above mentioned party, contractor is to receive a total of one hundred eighty three dollars ($183.00)." Cook said that he had had such contracts with the hotel company for 9 years.

Mr. Richmond, the hotel company's attorney, testified that for a number of years the hotel company had contracts with Cook to supply waiters, and that prior to the time of the written contracts, oral contracts were made; that the service of meals at the auditorium "are unusual occasions and they perhaps occur anywhere from five to ten times a year"; that the hotel company "has always furnished its waiters, the ones it considers its employees, with uniforms bearing the name Hotel Muehlebach, and they have a number and are black in appearance"; that the hotel company has "never furnished uniforms to the colored waiters hired by Cook"; that the uniform "they wear is a white plain jacket and that is furnished them by Mr. Cook"; that the hotel company furnishes the food, but that in the contracts made by the hotel company to serve at the auditorium "there is no mention as to who is or who is not to furnish the waiters"; that those who engage the hotel company to serve meals at the auditorium do not know who furnishes the waiters.

Richmond further testified that when the hotel company is to serve a dinner or luncheon at the auditorium, Cook is contacted and told how many waiters are wanted and that "he usually supplies them"; that the hotel company has no one in charge of the waiters supplied by Cook. "Mr. Cook is over there, he has an assistant and he takes charge of the waiters. We have men from the hotel over there who collect tickets and check foods. *Any instruction we might have to issue to the waiters are given to Mr. Cook and he in turn instructs the waiters*"; that Cook never secures any waiters to serve at the hotel; that if waiters are needed at the auditorium, in addition to those supplied by Cook, such extra waiters are obtained through a miscellaneous union and that these are white waiters. "Q. These extra waiters that you refer to that are obtained, is there any difference in the relationship between them and the service they perform for the hotel and those that are performed by waiters supplied by Mr. Cook in connection with special occasions at the auditorium? A. Yes, sir, these waiters come to the hotel and report to us and are under the direct control of our staff. In other words, our catering men have them report to them and they give them their instructions and they tell them what to do and it is under our jurisdiction as to hiring them, firing them and paying them, and we furnish them our customary hotel uniforms and they are carried on our payroll and we feel they are in our employ and we report them."

Mr. Richmond testified that Cook had furnished "us waiters for so many years that *we don't even tell him anything any more; he knows how to do it so well, it has been years since we have given him*

*instructions. . . . When we originally started out, I imagine years ago, we probably had some few things to tell Mr. Cook. Q. In other words, the Muehlebach maintains a certain standard on their service and you expect Mr. Cook to live up to those standards? A. That's right, the hotel has a certain standard and Mr. Cook is well acquainted with the standard. Q. And he is expected to maintain it? A. Oh, yes, sir. Q. If he didn't, what would happen? A. If he didn't maintain the standard we would make a contract with somebody else"* (italics ours).

The commission held that the hotel company "reserved and possessed at all times the right to control the manner in which the services of claimant and others who were serving the banquets should be performed, and that said services were performed in a manner in keeping with the service and reputation of the hotel as the contract called for doing; and that the rules for serving the banquets were, as ▮ testified to by the witness Cook, who furnishes these waiters, the hotel rules and the union rules."

▮ Sec. 9432(i), R. S. 1939, Mo. R. S. A., Sec. 9432(i), among other things, provides that in any judicial review of a finding of the Unemployment Compensation Commission "the findings of the commission as to the facts, if supported by competent evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." Subsection (i) of Sec. 9432 is similar, in effect, to that part of Sec. 3732, R. S. 1939, Mo. R. S. A., Sec. 3732, defining the scope of appellate jurisdiction of workmen's compensation appeals. The rule, on appeal, in workmen's compensation cases, is: "Findings of fact made by the commission, if sustained by sufficient competent evidence, are, absent fraud, conclusive on appeal, and in determining the sufficiency of the evidence upon which the commission based its finding we consider the evidence in the light most favorable to the finding and disregard evidence which might support a different finding than made." Adams v. Continental Life Ins. Co. et al., 340 Mo. 417, 101 S. W. (2d) 75, l. c. 77; A. J. Meyer & Co. case, supra [152 S. W. (2d) l. c. 186].

▮ The evidence we have italicized, supra, is chiefly relied upon by the commission to support the contention that there was substantial evidence to support the finding of the commission that the hotel company "reserved and possessed at all times the right to control the manner in which the services of claimant and others who were serving the banquets should be performed." If the hotel company had the right to control claimant in the manner of his service as waiter, then he was not Cook's employee and Cook was not an independent contractor. Such is conceded. And it can hardly be said that there was no substantial evidence that the hotel company did not have such right of control. It is true that the collector of internal revenue, on representations made by the hotel company, ad-

vised that Cook was "the employer of the waiters" procured by him and serving at the auditorium, but it appears from the collector's letter, in the record, that he so advised on the assumption that Cook was an independent contractor. Also, we might say that departmental rulings are not necessarily controlling. In the A. J. Meyer & Company case, supra, we said [152 S. W. (2d) l. c. 190]:

"It appears in the present case (Meyers case) that plaintiff took up with the federal treasury department the question of whether it (plaintiff) was liable for the excise tax under the federal Social Security Act on one of its salesmen, Fritz, who worked under the same kind of contract as did claimant Metz. Plaintiff was advised 'on the basis of information presented' that Fritz was not an employee under the federal Social Security Act. Our unemployment compensation act is not circumscribed by the federal act, Murphy case, supra, 142 S. W. (2d) l. c. 454." See also, Murphy et al. v. Midwest Mushroom Co., 350 Mo. 658, 168 S. W. (2d) 75.

The hotel company, in the brief, makes the point that the unemployment compensation act does not cover such casual service as claimant rendered as a waiter at the auditorium. This question was not raised before the commission, was not mentioned in the petition to the circuit court for review and was not passed on by the circuit court. In the situation, the point is not before us. Denny v. Guyton, 327 Mo. 1030, 40 S. W. (2d) 562, l. c. 568; Stoll et al. v. First Nat. Bank, 345 Mo. 582, 134 S. W. (2d) 97, l. c. 98; Sec. 1227, R. S. 1939, Mo. R. S. A., Sec. 1227.

The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.