# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

THE R. C. HUFFMAN CONSTRUCTION COMPANY, A CORPORA-
TION V. UNEMPLOYMENT COMPENSATION COMMISSION
OF VIRGINIA.

January 14, 1946.

Record No. 2977.

Present, All the Justices.

The opinion states the case.

*O. R. McGuire,* for the appellant.

*Abram P. Staples, Attorney General,* and *Kenneth C. Patty, Assistant Attorney General,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

This appeal involves the question whether the services performed by certain employees of The R. C. Huffman Construction Company are within the provisions of the Virginia Unemployment Compensation Act,[1] so as to render the Company liable for the payroll taxes for the year 1943, and the subsequent years, on the wages of such employees under section 7 of the Act, as amended. Michie's Code of 1942 and 1944 Supp., section 1887(99).

Section 2 of the Act (as amended by Acts 1938, ch. 446, p. 1004, Acts 1940, ch. 333, p. 538, Acts 1942, ch. 317, p. 446) reads as follows:

"Section 2. Definitions.—As used in this act, unless the context clearly requires otherwise:

&ast;  &ast;  &ast;  &ast;  &ast;

"(j) (7) The term 'employment', after December thirty-first, nineteen hundred and thirty-nine, shall not include:

&ast;  &ast;  &ast;  &ast;  &ast;

"(F) Service performed as an officer or member of the crew of a vessel on the navigable waters of the United States".

The primary question presented to us is whether the service of the employees of this Company is within this exception and hence excluded from the provisions of the Act. Incidentally, we are likewise concerned with the 1944

---

[1] Acts 1936-7, Ex. Sess., ch. 1, p. 3, as amended by Acts 1938, ch. 446, p. 1004, Acts 1940, ch. 333, p. 538, Acts 1942, ch. 317, p. 446, Acts 1944, ch. 181, p. 226; Michie's Code of 1942, section 1887(93) *et seq.,* 1944 Supp., section 1887(94) *et seq.*

amendment to the section. (Acts 1944, ch. 181, at page 230.)

The Unemployment Compensation Commission held that such service was not within the exception, and the Circuit Court of the city of Richmond affirmed this holding. Hence this appeal.

The matter was before the Unemployment Compensation Commission on an extended stipulation of facts, the material portion of which may be summarized thus:

The R. C. Huffman Construction Company, hereinafter called the Company, for a number of years has been engaged in dredging operations in the navigable waters of the United States and within the territorial limits of the Commonwealth of Virginia, under a contract with the United States Government. Such operations consist of deepening, widening, and improving the harbors and channels in the Hampton Roads area. For this purpose the Company employs several hydraulic and bucket dredges, with auxiliary barges and tugboats.

The material removed by the hydraulic dredges is either deposited, by means of pipes, on land or in the water elsewhere in the area, or is deposited by the dredges in scows and towed by tugs for deposit in deeper water. The deposit area, in some instances, is only a short distance from the dredges. In others, the material must be carried a distance of twenty-five or more miles.

The material removed by the bucket dredges is deposited in scows, from which it is dumped either on land or in deeper water in a manner similar to that in which the material from the hydraulic dredges is disposed of.

Both types of dredges are moved to the site of their work by means of tugs, but both types are moved from place to place on the site under their own power.

All of the dredges, tugboats and scows are registered vessels of the United States. They carry consolidated enrollment and license certificates and observe the navigation rules which apply to all vessels operating in the coastal waters of the United States.

Some, but not all, of the dredges have both eating and sleeping accommodations for those employed thereon.

The scows or barges are not self-propelled, but are towed by tugboats.

Since the Unemployment Compensation Commission held that the service of the employees of the Company on tug-boats is within the terms of the exception, and hence not covered by the Act, we have no further concern with these employees. Our inquiry involves only the employees on the dredges and scows.

Each dredge is under the command and in charge of a captain who is the superior officer of the other employees thereon. Inasmuch as the operation of the dredges may involve other vessels, the captains of the dredges are required to have a thorough knowledge of marine signals, navigation lights, and rules of the road.

Next in authority on the dredges are levermen who supervise the actual hydraulic or cutting operation of the machines.

On each dredge there are engineers and firemen. The engineers have charge of the operation and maintenance of the machinery employed in the dredging operations. The firemen fire, operate, and maintain boilers which furnish steam for the operation of the respective dredges.

On each dredge there is a man who is in charge of the deck hands. The deck hands clean and repair the dredge, assist in removing its anchors, maintain the pipe lines through which the material is pumped from hydraulic dredges, and generally do such labor as may be necessary in dredging operations.

On each scow or barge are one or more scowmen who assist in making fast and disengaging the towlines by which the scows are towed between the site of the dredging operations and the dumping grounds. Incidentally, these men operate the pumps which pump out the bilges of the scows.

The cooks and messboys prepare, cook and serve food to the men on the dredges and scows.

It is further stipulated that these employees "receive all the benefits of seamen under the laws of the United States, and are classified as seamen."

The stipulation does not disclose whether these employees signed seamen's articles with the respective dredges on which they were employed. Presumably they did not.

The Attorney General concedes that each of these dredges and scows, thus employed, was "a vessel on the navigable waters of the United States" within the definition of section 2 (j) (7) (F) of the Act, but he insists that the work done by each of these employees was not "service performed as an officer or member of the crew" within the definition. In order to come within the exclusion, he says, the service must "substantially tend to promote the welfare of the vessel as an agency of navigation;" that the service of these individuals, while maritime in character, was not incidental to navigation, but was incidental to the construction of a channel through the navigable waters of the United States within the territorial limits of the State.

This view, in effect, both the Unemployment Compensation Commission and the Circuit Court of the city of Richmond upheld.

The appellant, on the other hand, contends that since these men were employed on vessels on the navigable waters of the United States, are "classified as seamen," and are entitled to all of the benefits as such, under the Federal statutes and decisions, they are members of the crew of the respective vessels on which they are employed within the meaning of our statute.

The appellant first says that it is the function of the Federal government to define what types of floating equipment are "vessels", and what employees thereon are "seamen" and "members of the crew"; that under various Federal statutes and numerous decisions of the United States courts, such employees as those with whom we are here concerned are classified and recognized as "seamen" and "members of the crew", and are given certain valuable benefits as such; and that a State statute which fails to conform

to such interpretation is unconstitutional in that it en- croaches upon the "admiralty and maritime jurisdiction" granted exclusively to the Federal courts under Article III, section 2, of the Constitution of the United States.

This contention was, we think, definitely set at rest in the recent case of *Standard Dredging Corp.* v. *Murphy*, 319 U. S. 306, 63 S. Ct. 1067, 87 L. Ed. 1416, which upheld the constitutionality of the New York Unemployment Compensation Act. This Act contained no provision similar to that in the Virginia Act, exempting the service of a "member of the crew of a vessel", and was, therefore, broad enough to include such, provided these employees were engaged primarily in maritime work in the territorial waters of that State. The court pointed out (319 U. S., at pages 308, 309) that the State statute, in levying a tax upon the employers of these maritime workers in order to provide relief in case of their unemployment, in no way infringed upon the admiralty and maritime jurisdiction of the Federal courts. It distinguished the case of *Southern Pac. Co.* v. *Jensen*, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, which invalidated a New York Workmen's Compensation Act in so far as it deprived a maritime employee of his right to recover in admiralty for his injuries and relegated him to the State Act for relief.

Moreover, it was held in the *Standard Dredging Corp. Case* (319 U. S., at pages 310, 311.) that the fact that the Federal Unemployment Tax Act (26 U. S. C. A., Int. Rev. Code, section 1607, (c), (4) ) exempts from the Federal tax employers of "an officer or member of the crew of a vessel on the navigable waters of the United States" does not operate to exempt them from State unemployment insurance taxes.

The appellant next argues that in exempting from the operation of the statute "service performed as an officer or member of the crew of a vessel," the General Assembly was using the words "officer or member of the crew" as they are defined in the various Federal statutes and decisions. It

relies mainly upon the recent decision of *Norton* v. *Warner Co.*, 321 U. S. 565, 64 S. Ct. 747, 88 L. Ed. 931, in which it was held that a bargeman, the sole employee on a barge operated in the navigable waters of the Philadelphia harbor, was a "member of the crew" of that vessel and expressly excluded from the coverage of the Longshoremen's and Harbor Workers' Compensation Act (33 U. S. C. A., sections 902, (3), 903, (a), (1) ). To the same effect is the recent case of *Tucker* v. *Branham*, 151 F. (2d) 96.

The *Norton Case* distinguished but did not overrule the earlier case of *South Chicago Coal, etc., Co.* v. *Bassett*, 309 U. S. 251, 60 S. Ct. 544, 84 L. Ed. 732, in which it was held that, although his work was maritime in character, a laborer who was employed on a lighter engaged in fueling a steamship to which it was moored, was not a "member of the crew" of the lighter within the meaning of the Longshoremen's and Harbor Workers' Compensation Act. The basis of the latter holding was that the employee's chief task was that of facilitating the flow of coal from the lighter to the vessel which was being fueled, and that while he incidentally aided in throwing and making fast the lighter's lines, "He performed no navigation duties" (309 U. S., at page 255).

Indeed, the *Norton Case* approved the holding in the *Bassett Case* that the word "crew", as used in the Federal statutes and decisions, "does not have an absolutely unvarying legal significance," but that its meaning depends upon "the context of the particular use of the term and the object to be accomplished by the enactment under consideration" (309 U. S., at pages 258, 259; 321 U. S., at pages 571, 572).

Upon this reasoning it was held in the *Bassett Case* that it was the intent of Congress to include within the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. A., sec. 901 *et seq.*, employees "whose service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation" (309 U. S., at page 260).

Following the same reasoning, it was held in the *Norton Case* that the bargeman was a member of the crew of that vessel and excluded from the Act, because he was a member of the "ship's company" and was " 'naturally and primarily on board' the vessel 'to aid in her navigation' " (321 U. S., at page 572).

The statutes of Iowa, Oregon, Illinois, Missouri, and New Jersey contain language identical with the exemption found in the Virginia statute. Each of these statutes exempts from the term, "employment", "Service performed as an officer or member of the crew of a vessel on the navigable waters of the United States". In construing this exemption, only the highest court of Iowa has reached the conclusion contended for by the appellant. The highest courts of the other States have reached the opposite conclusion, that is, the one contended for by the Attorney General and upheld by the Unemployment Compensation Commission and the court below.

In *Woods Bros. Const. Co.* v. *Iowa Unemployment Compensation Comm.*, 229 Iowa 1171, 296 N. W. 345, the court dealt with the status of certain employees of a construction company which was engaged in the performance of a contract for the improvement of the navigability of the Missouri river. The project consisted of fabricating mats from barges, loading the mats with stone, sinking them in the river, and attaching them to piles driven in the bed. It was held that the employees on both the barges and the pile drivers were members of the "crew" of the respective vessels, because their services contributed to "the operation and welfare" of the vessels. In reaching this conclusion the court was influenced by the fact that the Bureau of Internal Revenue had placed a similar interpretation upon the exemption in the Federal Unemployment Tax Act (26 U. S. C. A., Int. Rev. Code, section 1607, (c), (4) ), which is identical with the exemption in the Iowa Act.

In *Puget Sound Bridge, etc., Co.* v. *State Unemployment Compensation Comm.*, 168 Or. 614, 126 P. (2d) 37, the court dealt with a situation quite similar to that with which we are

confronted. There the employer was engaged in dredging a channel of the Columbia river under a contract with the United States Government. For this purpose it employed a drill barge, a registered vessel which had no means of self-propulsion. There were no living quarters on the barge and the employees lived ashore. None of them signed seamen's articles. One of the employees, who had been engaged in firing the "donkey engine" on the barge, claimed and was allowed unemployment compensation benefits, and the employer appealed. The question involved was whether he was a "member of the crew" within the exception.

The court said (126 P. (2d), at page 42): "Neither the state nor the federal act defines the term, 'crew'. We should, therefore, give to such term its ordinary and commonly accepted meaning in maritime law to the end that the purposes of the act will be accomplished. Ordinarily, when the crew of a vessel is referred to, those persons are naturally meant who are on board and aiding her in navigation. * * * It is true that the work in which Sedoris [the claimant] was engaged was a maritime project in aid of navigation and commerce. However, as fireman [of the donkey engine on the barge], he had nothing to do with the welfare of the vessel so far as its navigation was concerned. The 'vessel' upon which he worked was not far removed from being a stationary dredge. It requires a severe stretching of the imagination to think of the services performed by Sedoris as being similar to those rendered by seafaring men. He fired the donkey engine, not for the purposes of navigation of the 'vessel', but to dredge a channel of the Columbia river. * * * We believe that the term 'crew' should not be limited to those persons on board who are physically causing the vessel to move through the water, but to those contributing in some way to its operation and welfare as an instrument of navigation. * * * "

The Oregon court based its conclusion largely on the reasoning in *South Chicago Coal, etc., Co.* v. *Bassett, supra,* and expressly declined to follow the holding in *Woods Bros.*

*Const. Co.* v. *Iowa Unemployment Compensation Comm.,* supra.

The same conclusion was reached in *Grant Contracting Co.* v. *Murphy,* 387 Ill. 137, 56 N. E. (2d) 313, which likewise involved the services of employees engaged in dredging operations in navigable waters. One of the dredges was self-propelled, capable of moving under its own power, and was documented under the laws of the United States. The status of a Diesel engineer, oilers, and deck hands was involved. None of these employees signed ship's articles.

The contention was made that the State court should follow the ruling of the Bureau of Internal Revenue which classified these employees as members of the "crew" within the meaning of the Federal Unemployment Tax Act. 26 U. S. C. A., Int. Rev. Code, sec. 1607, (c), (4). But the Illinois court declined to do so, saying that such interpretation, while "persuasive" with, was not "binding" upon it.

The Illinois court declined to follow the holding in *Woods Bros. Const. Co.* v. *Iowa Unemployment Compensation Comm.,* supra, but, on the contrary, followed the pronouncement in *Puget Sound Bridge, etc., Co.* v. *State Unemployment Compensation Comm.,* supra, that it was the intention of the statute to except from its operation "those employees engaged in maritime work who are ordinarily considered as seafaring men," that is, those contributing in some way to the operation and welfare of the vessel "as an instrument of navigation."

The same conclusion was reached in *Cape Girardeau Sand Co.* v. *Unemployment Compensation Comm.* (Mo.), 184 S. W. (2d) 605, involving the services of employees who fired steam engines on dredges used in pumping sand from the river, and who incidentally aided in handling the lines on the dredges and auxiliary barges.

See also, *Shore Fishery* v. *Board of Review, etc.,* 127 N. J. L. 87, 21 A. (2d) 634, involving the services of employees engaged in removing fish from pound nets and in operating the boats between such nets and the shore. To the same effect is the holding in the later case of *Weber* v. *Unem-*

ployment Compensation Comm., 130 N. J. L. 328, 32 A. (2d) 602, affirmed per curiam, 131 N. J. L. 225, 35 A. (2d) 880.

In Claim of Cassaretakis, 289 N. Y. 119, 44 N. E. (2d) 391, 394, it was held that the services of an assistant cook on a dredge, and those of a grain trimmer on a floating grain elevator, while maritime in character, were merely incidental to construction and stevedoring operations, respectively, were not "incidental to navigation," and hence were not performed as "members of the crew" of a vessel within the exclusion clause of the Federal statute. (26 U. S. C. A., Int. Rev. Code, sec. 1607, (c), (4).) This case was affirmed sub nomine, Standard Dredging Corp. v. Murphy, supra, but without dealing with this particular subject.

Not every one employed on a vessel performs services "as a member of the crew." For instance, it was held in Murphy v. Menke, 350 Mo. 145, 165 S. W. (2d) 653, that actors on a showboat were not in that category. While the employees in the case before us are nearer the border line, the controlling principle is the same in both cases.

We agree with the reasoning in the Oregon, Illinois, Missouri, New Jersey, and New York cases cited above. We think the exclusion in the Virginia statute is designed to exempt the services of those who are ordinarily considered as seafaring men, and whose services tend to promote the welfare of the vessel as an agency of navigation. The individuals whose services are here involved were employed, not in the operation of vessels as instruments of navigation, but in the operation of vessels as a means of excavating a channel through navigable waters.

If the appellant were correct in its contention, then it would be relieved from the payroll tax levied on the wages of these employees. But that is not all. If such services were exempt from the operation of the Act, then the employees themselves would, of course, not be entitled to unemployment benefits of the Act.

In Unemployment Compensation Comm. v. Collins, 182 Va. 426, 438, 29 S. E. (2d) 388, 393, we said: "The

Unemployment Compensation Act is primarily a public welfare measure and the levying of taxes thereunder is merely incidental to its purpose, which is to assure a measure of security against the hazard of unemployment in our economic life. Accordingly, we agree with the view that it should be liberally construed to effect its beneficent aims."

Where there is an exemption from a general tax, the statute should be strictly construed against the party asserting such exemption, and the rule requiring liberal construction in favor of a taxpayer is not applicable. *Hunton* v. *Commonwealth*, 166 Va. 229, 236, 183 S. E. 873, 876, and authorities there cited; 51 Am. Jur., Taxation, sec. 524, p. 526. As applied to this particular exemption in unemployment compensation statutes, see *Puget Sound Bridge, etc., Co.* v. *State Unemployment Compensation Comm.*, supra (126 P. (2d), at page 40); *Grant Contracting Co.* v. *Murphy, supra* (56 N. E. (2d), at page 316.)

The judicial trend is to extend and not to restrict the coverage of unemployment compensation acts. *Unemployment Compensation Comm.* v. *Harvey*, 179 Va. 202, 217, 18 S. E. (2d) 390, 397; *Unemployment Compensation Comm.* v. *Collins, supra* (182 Va., at page 438, 29 S. E. (2d), at page 393).

The argument is made that because a former unemployment compensation commissioner had ruled in 1938 and 1939 that the service now under consideration was excluded under the Act, the present commissioner and the lower court were powerless to change the ruling. In support of this argument the appellant cites such cases as *Richmond Food Stores* v. *Richmond*, 177 Va. 592, 15 S. E. (2d) 328, which hold that in the interpretation of statutes of doubtful meaning, the construction placed upon them by the administrative officials charged with their enforcement is entitled to careful consideration by the courts. But it by no means follows that the interpretation of such administrative officials is binding either upon them, their successors, or the courts, or that it cannot be inquired into and changed if found to be

erroneous. *Hancock Co.* v. *Stephens*, 177 Va. 349, 356, 14 S. E. (2d) 332, 334; 50 Am. Jur., Statutes, sec. 319, p. 311.

Here, as the record shows, the present unemployment compensation commissioner made no attempt to collect the taxes of which the appellant had been relieved by reason of the prior ruling. But being convinced that the prior ruling was erroneous, the present commissioner notified the appellant that it would no longer be adhered to, and that henceforth the appellant would have to pay the levies. This was eminently fair to the taxpayer and was certainly all that it was entitled to.

By the Acts of 1944, ch. 181, p. 226 (Michie's Code, 1944 Supp., sec. 1887 (94), (j), (7), (F), the General Assembly amended the section now under consideration, by adding the italicized words:

"(F) Service performed as an officer or member of a crew of a vessel on the navigable waters of the United States. *The term 'vessel' as used herein does not include dredges and auxiliary equipment used in connection therewith.*"

While the amended definition is expressly made applicable to the term "employment" after December thirty-first, nineteen hundred and forty-three (Sec. 2, (j), (7), Acts 1944, at page 230), the appellant argues that it "conclusively establishes that at least prior to" the amendment "the original language of the section intended to and did include dredges and auxiliary equipment as 'vessels', and that service aboard such vessels was exempted from the terms" of the Act.

On the other hand, the Attorney General asserts with confidence that the purpose of the amendment is merely to make certain that the interpretation which the Commission and the lower court had applied to the term "member of the crew of a vessel" should prevail.

In the absence of any showing of the legislative history of the amendment we cannot say what motivated it. Both contentions are entirely speculative and the one strikes us as being no more likely than the other.

The appellant next contends that since the decree appealed from, as well as the order of the Unemployment Compensation Commission, requires it to file with the Commission the necessary reports "showing all the earnings up to $3,000 in any one calendar year with respect to each individual in petitioner's employment in the State of Virginia and the territorial waters thereof *after December 31st, 1942*, as set out in the stipulation of facts filed herein (except such individuals as have been exclusively employed on its tugs), and to pay the contributions assessable against it on account thereof" (emphasis added), the 1944 amendment applies to the taxes assessable against it for the year 1944 and the subsequent years. Hence, it asks us to pass upon the validity of the amendment.

In this connection the appellant argues that the amendment, which provides that the term "vessel" does not include "dredges and auxiliary equipment," is an unconstitutional infringement by the State Legislature upon the admiralty and maritime jurisdiction, which, under Article III, sec. 2, of the Constitution of the United States, is granted to the Federal judiciary. Here the argument is that the term "vessel" has been fixed by various Federal statutes and decisions and includes both a dredge and a scow, and that the State Legislature cannot say otherwise.

What we have already said with respect to the claim of the unconstitutionality of the statutory definition of "member of the crew" applies with equal force here. This Virginia definition of "vessel" in no way infringes upon the provisions of any Federal statute dealing with dredges or scows, or any other type of vessel. Nor does it invade the Federal jurisdiction over them. The definition is expressly limited to the State statute. The language is: "The term 'vessel' *as used herein* does not include dredges and auxiliary equipment used in connection therewith." (Emphasis added.) It is but another way of saying that for the purposes of the Virginia Unemployment Compensation Act the "service performed" by an employee on a dredge and its auxiliary equipment is "employment", with the result that such an

employee is entitled to and not denied the benefits of the Act. That the State has the constitutional authority to extend the benefits of its Act to such an employee is settled by *Standard Dredging Corp.* v. *Murphy, supra.*

Neither can we agree with the contention that the 1944 amendment, in singling out "dredges and auxiliary equipment," and providing that they are not to be classed as "vessels", and that their owners and operators are subject to the pay-roll tax, violates the equal protection clause of the Fourteenth Amendment.

That argument, if sound, could be leveled at the original Act, for, as we have seen, it applies to the employers of certain maritime workers and excludes others. But it is well settled that a State "may lay an excise on the operations of a particular kind of business, and exempt some other kind of business closely akin thereto." *Steward Machine Co.* v. *Davis,* 301 U. S. 548, 584, 57 S. Ct. 883, 889, 81 L. Ed. 1279, 109 A. L. R. 1293, and cases there cited.

On the whole we find no error in the decree appealed from, and it is

*Affirmed.*