## CIRCUIT COURT OF THE CITY OF LYNCHBURG

Harry J. Bradley

v.

Va. Employment Commission
and Lynchburg Foundry Co.

June 20, 1977

By JUDGE WILLIAM W. SWEENEY

This is an appeal from a decision of the Virginia Employment Commission on April 6, 1977, denying unemployment compensation benefits to Harry J. Bradley, a twenty-seven year employee of Lynchburg Foundry Company. Although Bradley has since been rehired by the Company, he was disqualified for benefits from October 10, 1976, until March 21, 1977. Section 60.1-67 of the Virginia Code provides for judicial review of findings of the Virginia Employment Commission in the Circuit Court. The statute further provides that the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of such courts shall be confined to questions of law.

This case was first heard on December 21, 1976, before an appeals examiner in Lynchburg. The examiner ruled against the petitioner, Bradley, who appealed to the Commission. In its decision of April 6, 1977, the Commission affirmed the decision of the appeals examiner. On June 8, 1977, a hearing was conducted before this Court after which written authorities were filed. The sole issue is whether the Commission was justified in finding that Bradley's leaving work under conditions existing on September 6, 1976, constituted "misconduct" under Section 60.1-58(b).

The only findings of fact are contained in the appeal examiner's opinion (Transcript, section 8):

> *Findings of Fact*: The claimant appealed a determination of the Deputy which disqualified him effective October 10, 1976, for having been discharged due to misconduct in connection with his work.
>
> The claimant was employed at the Lynchburg Foundry from 1950 to September 6, 1976. He worked in the Cupola Department and received union scale rate of pay. He had been discharged on or about April 1, 1976, for absenteeism but after appeal through the union grievance procedure, was reinstated May 14, 1976. There were conditions to his reinstatement, among others that he give notice on any occasion where he was forced to be absent from work. On September 6, 1976, the claimant was absent from work and did not give notice to the employer. He was therefore terminated a second time.
>
> The reason for the claimant's absence was his wife's illness. His wife had suffered a heart attack about September 1 and was in the hospital in intensive care at the time.

This Court is bound by such findings of fact as are supported by the evidence. There is no issue of fraud. The only finding of fact with which I disagree is the finding that "on September 6, 1976, the claimant was absent from work and did not give notice to the employer."

It is not clear from the appeals examiner's decision whether he found that Bradley did not come to work at all on September 6, 1976, or whether he found that Bradley did come to work and later left. Since September 6, was a holiday, (Labor Day) and the Foundry had no record of Bradley's attendance at work, the undisputed evidence is that Bradley did report to work that evening about one-half hour late at 10 p.m. and left about midnight to return to the hospital where his wife was seriously ill. It is also undisputed that he notified a company guard when he left. There was some dispute as to whether Bradley was needed at work on the night in question but

since the evidence was conflicting on this point, I adopt the Commission's view that he was needed and that his absence from work was detrimental to the Company.

While this Court is bound by findings of fact of the Commission supported by the evidence, it is not bound by conclusions based upon such findings. The appeal examiner and the Commission concluded that Bradley's absence from work on the evening of September 6, 1976, constituted misconduct under Section 60.1-58(b) and that benefits were properly denied. I cannot agree with this conclusion nor do I feel that the Commission's decision was fully supported by the facts.

The record shows that Bradley, a long time employee of the Foundry, was a good worker but in the last two years had a record of excessive absences from work as a result of his wife's illness. In April, 1976, he was discharged because of frequent visits to the University of Virginia Hospital where he transported his wife for kidney machine treatment. Bradley was reinstated on May 14, 1976, under certain stated conditions. Since that time, a Lynchburg hospital has acquired a kidney machine, thus eliminating the necessity of the trips to Charlottesville. The May 1976 conditions of reinstatement provided, among other things, that Bradley should contact his department head, Mr. McGlothlin, immediately whenever conditions arose that prevented him from reporting to work as scheduled or required him to leave work. It further provided that McGlothlin could be reached at work during normal working hours from 8 a.m. to 4 p.m. The written reinstatement agreement was not specific as to contacting McGlothlin after regular hours. In the event that McGlothlin could not be contacted, Bradley was to contact the shift foreman. A later agreement stating conditions of reinstatement dated March 21, 1977, under which agreement Bradley is now working, provided in paragraph 2, "at all other times, Mr. McGlothlin can be reached at home." This sentence did not appear in the first reinstatement agreement.

On September 1, 1976, Bradley's wife was hospitalized in Lynchburg with serious heart problems. While she was in the hospital, she suffered a relapse and was in critical condition as shown by the reports from her doctor. On holidays, the Foundry used an evening startup crew to come in to prepare for operations the next day. On the

evening of September 6, 1976, Bradley was scheduled to come to work at 9:30 p.m. He had been at the Lynchburg hospital with his wife and family but because his brother did not arrive in time to take him to work, Bradley was thirty minutes late in reporting. There is evidence from representatives of the Foundry that being late for work on this occasion would not have resulted in dismissal.

On the evening in question, the only people at the Foundry were Bradley, three co-workers and a guard. There was no supervisor on duty and no time clocks were in operation. The first supervisor was to arrive at 2 a.m. Bradley testified that the doctor had informed him that he should not go to work on this evening because of his wife's condition. After working for approximately two hours, Bradley left work at midnight because he felt he had to go back to the hospital and be with his wife and family. He told the guard that he was leaving but he did not notify anyone else at that time. His reasons for not calling Mr. McGlothlin were that the reinstatement agreement had provided for him to call McGlothlin during normal work hours between 8 a.m. and 4 p.m. and because McGlothlin had told him on other occasions not to call him at night. The next day, September 7, Bradley called his employer to advise what had happened and that he would not be in to work that night because of his wife's illness. When he did appear for work on September 8th, he was discharged.

The question is whether the circumstances under which Bradley left work after reporting to work on September 6, 1976, constituted "misconduct" under Section 60.1-58(b), and the decisions of the Commission and the Virginia Supreme Court interpreting such statute. While Bradley's prior work record is admissible for purposes of showing the background of the case, absences on other occasions prior to his May 1976 reinstatement may not be used to prove misconduct under the statute. The evening of September 6, 1976, is the focal point of this appeal notwithstanding statements in the Commission's brief that a series of unexplained absences may constitute "misconduct" (page 5). Here, our primary concern is one absence, for which benefits were denied.

There are several basic principles which apply. First, evidence which is uncontradicted and not inherently incredible or inconsistent with other facts and circumstan-

ces must be accepted by the trier of the facts. See *Epperson v. DeJarnette*, 164 Va. 482, 180 S.E. 412 (1935). Secondly, the burden of proving misconduct of the employee by clear and convincing evidence rests on the employer. Decision No. 3238-C, Virginia Employment Commission, June 11, 1958.

The Commission, in other cases, has defined "misconduct" under the statute as follows:

> The Commission in its decisions has limited the definition of misconduct to such conduct which evinces a willful or wanton disregard of an employer's interest as is found in deliberate violations or disregards of standards of behavior which the employer has a right to expect of his employee or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent, or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. On the other hand, mere inefficiency, incapability, mistake, or misjudgment has never been tantamount to misconduct. The Commission has also consistently held that the burden is upon the employer to prove misconduct. Decision No. 6193-C, Virginia Employment Commission, February 14, 1974.

Even if the appeal examiner's findings of fact as adopted by the Commission are accepted entirely, the circumstances of this case do not meet the test for "misconduct" as established by the Commission itself. The Reinstatement Agreement of May 14, 1976, was subject to several interpretations as to when Bradley was to notify the Melting Department Head, Mr. McGlothlin. Any ambiguities in the written agreement must be construed in favor of Bradley. It was not worded to cover "emergencies". On the night in question, Bradley left work under circumstances which he, at least, considered an emergency. He did not simply walk off the job. He left to go back to the hospital to be with his wife who was in critical condition. Of course, he should have done more than he did but the unusual circumstances as to the holiday startup conditions and his

wife's illness must be considered. This is not the case of an employee who simply walks off the job for no reason and without notice on a normal workday after having been previously warned. If it were, I would affirm the Commission's decision.

This might be called a "borderline case" but it has been held that the Virginia Unemployment Compensation Act should be liberally construed and that "the judicial trend is to hold that the Act covers borderline cases". See *Unemployment Compensation Commission v. Collins*, 182 Va. 426, 29 S.E.2d 388 (1944).

The ruling of the Commission is reversed and benefits for the period in question shall be paid.