## CIRCUIT COURT OF THE CITY OF RICHMOND

Prince William Publishing Co., Inc.

v.

Virginia Employment Commission

February 22, 1989

Case No. N 4030-1

By JUDGE MELVIN R. HUGHES, JR.

On December 20, 1988, the Court heard argument on petitioner, Prince William Publishing Company's Petition for Judicial Review of a determination by respondent, the Virginia Employment Commission ("VEC").

The VEC decided that services performed by newspaper motor route carriers for petitioner constituted employment such that the petitioner is required to pay unemployment compensation insurance in accordance with Section 60.2-212(c) et seq., Code of Virginia of 1950, as amended. Petitioner claims that the VEC decision is contrary to the facts and applicable law.

### Facts

The record reveals the VEC based its decision on findings of fact as follows.

Prince William Publishing Company is a corporation duly organized and existing under the laws of the Commonwealth of Virginia. The petitioner publishes a newspaper called *The Journal Messenger* with general circulation in Prince William County, Virginia.

The distribution network of the newspaper consists of individuals under the age of eighteen who deliver the

paper on foot and individuals over the age of eighteen who deliver the newspapers by vehicle. Since the individuals under the age of eighteen are exempted from the Unemployment Compensation Act, the only issue here concerns the capacity of the services performed by the motor route carriers.

The motor carriers are recruited through newspaper advertisements as well as by word of mouth. The advertisements contain the following information: "Independently contracted motor route carrier needed: Dependable Transportation - Must Be Honest & Dependable - Must Be Available Mon. - Fri., 12 p.m. - 5 p.m., Sat. 2 a.m. - 7 a.m."

Notwithstanding the advertisement, petitioner recommends a time guideline for weekday delivery by 7:00 p.m.; however, the carrier testified that it was 5:30 p.m.

In each case, petitioner and the carrier enter into a written contract. Under the contract, a carrier may be required to provide the petitioner with a copy of his or her subscription list, assign collection rights to the newspaper, consent not to place any circulars or inserts into the newspapers, and agree to find a substitute carrier when he or she is unable to make deliveries.

The contract also contains a termination provision. During the first thirty days of the contract, the petitioner may terminate the contract without cause upon one day's notice. Thereafter, either party can terminate the contract, without cause, upon giving thirty days' written notice. Petitioner may terminate without notice upon a breach by the carrier of any provision of the contract.

The contract describes the carriers as independent contractors who are responsible for paying all federal, state, and local taxes. The carriers use their own vehicles and are responsible for maintenance and insurance costs. The carriers are reimbursed by petitioner for their mileage costs.

The carriers serve designated geographical areas. They choose how they will cover their routes, but they are not permitted to solicit business from other areas. Customer complaints are handled by the carriers, and the carriers are not required to service new subscribers.

Petitioner sets the retail price for the papers; however, the carriers may charge a variable rate for their delivery services. The customers prepay directly to the petitioner on a three-month basis. Petitioner then pays

the carrier on a weekly basis. The risk of loss to the papers is on the carrier.

The papers are provided to the carriers at wholesale. This rate is determined by Circulation Managers of the petitioner who consider billing expenses, length of route, road conditions, collections, supplies, and customer density. The rate is proposed by the Company and then negotiated with the carriers. The difference between the wholesale and retail rates is the carrier's gross profit.

## Scope of Review

The Court's review of a VEC decision is limited to questions of law, and the Commissioner's findings of fact, if supported by the evidence and in the absence of fraud, are conclusive. Section 60.2-500(B)(1).

## Opinion

For purposes of unemployment compensation, the term "employment" is defined in Section 60.2-212(C) as follows:

Services performed by an individual for remuneration shall be deemed to be employment subject to this title unless:
(1) Such individual has been and will continue to be free from control or direction over the performance of such services, *both under his contract of service and in fact*; and
(2) Such service is either outside the usual course of the business for which such service is performed, or such service is performed outside of all the places of business of the enterprise for which such service is performed; or such individual, in the performance of such services, is engaged in an independently established trade, occupation, profession, or business. (Emphasis supplied).

With the statutory definition in mind, certain well-settled case law principles should also be considered. The determination must be made from the facts of the particular case in light of well-settled principles. *Hann*

*v. Times-Dispatch Pub. Co.*, 166 Va. 102, 105-106, 184 S.E. 183, 184 (1936). The Act is to be liberally construed to effect its beneficent purpose, and in borderline cases, "employment" should be found to exist. *Va. Emp. Comm. v. A. I. M. Corporation*, 225 Va. 338, 302 S.E.2d 534 (1983).

The parties do not contest that the motor route carriers receive remuneration, but there is considerable disagreement over subparagraphs (1) and (2) of Section 60.2-212(C). The burden of proof as to these subparagraphs is on the petitioner. *Va. Emp. Comm. v. A. I. M. Corp.*, 225 Va. 338, 302 S.E.2d 534.

The Supreme Court of Virginia has decided the thrust of Section 60.212(C)(1) on a standard of power of control:

> In any master-servant analysis, be it in the area of tort liability, worker's compensation, or unemployment compensation, the power of control is the determining factor in ascertaining the parties status. The potential power of control, not the actual exercise of control, is the important element . . . and the right of control does not include only the power to specify the result to be accomplished, but, in the language of the Act, it must include the power over the "performance of such services, both under (the) contract of service and in fact." . . . If the party for whom the work is to be done has the power to direct the means and methods by which the other does the work, an employer-employee relationship exists; if the latter is free to adopt such means and methods as he chooses to accomplish the results, he is not an employee but an independent contractor.

*Va. Emp. Comm. v. A. I. M. Corp.*, 225 Va. 338, 347, 302 S.E.2d 534, 539-540.

Petitioner contends that the VEC decision in this case conflicts with the applicable law and a previous decision by the Commission. Petitioner argues that in *Richmond Newspapers, Inc. v. Gill*, 224 Va. 92, 294 S.E.2d 840 (1982), the Supreme Court found that newspaper distributors employed by a newspaper company were independent contractors. The Court finds *Gill* distinguishable because

it was decided under the Virginia Workers' Compensation Act which requires only the first prong of the test -- absence of control. *Gill*, 224 Va. at 98, 294 S.E.2d at 843. In addition, as to the control element, there are several factual distinctions between the *Gill* case and this case. Most notably, in *Gill*, the distributors did the billing and collection without specified work hours. *Gill*, 224 Va. at 101, 294 S.E.2d at 845.

In *Carter Glass Newspapers, Inc.*, Liability Decision No. 109 (December 29, 1983), the VEC decided that services performed by motor route carriers did not establish an employment relationship. However, *Carter Glass* is also distinguishable from the case presently under consideration. In *Carter Glass*, distributors billed and collected themselves, and their employer permitted the distributors to charge variable retail rates for the newspaper. *Id.* Furthermore, the termination provision in *Carter Glass* was more limited in not allowing termination without cause within the first thirty days of employment. *Id.* In fact, in a VEC case with more closely connected facts to the one at hand, the Commission found the newspaper company liable for unemployment compensation payments. *J. L. Ruffner, t/a Washington Post Distributor*, Liability Decision No. 125 (May 31, 1984).

As to power of control, VEC's decision is substantially supported by the evidence and case law. Although the contract provides otherwise, a potential for control did exist both in contract and in fact.

Even if it can be said that the distinctions between *Carter Glass* and the case at hand are insignificant, the petitioner has not met its burden of proving one of the three alternative tests set out in Section 60.2-212(C)(2), noted above.

The services performed by the motor route carriers are not outside the usual course of business, since the paper is designed for circulation. Similarly, the distributors services are not outside of the Company's place of business, since the places of business must include the circulation territories assigned by the petitioner. *See Life & Casualty Insurance Co. v. U.C.C.*, 178 Va. 46, 16 S.E.2d 357 (1941) (where the Supreme Court held, in a case involving insurance agents, that the places of business included the territory in which the agents worked).

Lastly, there is no support in the record that the motor route carriers are engaged in an independently established business. In *U.C.C. v. Collins*, 182 Va. 426, 29 S.E.2d 388 (1944), the Supreme Court stated:

> It will be observed that in order to escape the provisions of the statute, the requirement is not that the alleged employee be engaged in an independent business. "He must be in one that is independently established." An "established" business is one that is permanent, fixed, stable, or lasting.

*U.C.C. v. Collins*, 182 Va. at 437, 29 S.E.2d at 393.

Some of the criteria which indicate that carriers are independently established include: whether the carriers advertise their services, lease office space, or obtain business licenses. *Carter Glass, supra.* Although this is by no means an exclusive list, there should be some evidence beyond that required under subparagraph (1) for this alternative to be at all meaningful.

Accordingly, the Court finds the Virginia Employment Commission's decision to be substantially supported by the evidence and applicable law.