# Richmond

## Unemployment Compensation Commission of Virginia v. L. E. Collins.

March 13, 1944.

Record No. 2743.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Abram P. Staples, Attorney General* and *Kenneth C. Patty, Assistant Attorney General,* for the appellant.

*Bernard Mahon* and *John S. Davenport, III,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

The question involved in this appeal is whether the appellee, L. E. Collins, was at any time since December 31, 1940, an "employer" within the meaning of the Virginia Unemployment Compensation Act,[1] and should have been required to file the payroll reports and pay the contributions assessable against him under the provisions of that Act. After a hearing held under section 7(a) of the Act, as amended (Michie's Code of 1942, section 1887(99)(a) ), the Commission found and adjudged that Collins was an employer within the meaning of the Act, during the years 1941 and 1942, and ordered and directed him to file the required pay-roll reports and to pay the contributions assessable against him under the Act for those years.

Pursuant to the same section of the Act, Collins filed a petition for review in the Law and Equity Court of the city of Richmond, Part Two. The Commission answered and the matter was heard on the transcript of the testimony

[1] Acts 1936-7, Ex. Sess., ch. 1, p. 3, as amended by Acts 1938, ch. 446, p. 1004; Acts 1940, ch. 130, p. 179; Acts 1940, ch. 224, p. 357; Acts 1940, ch. 333, p. 538; Acts 1940, ch. 334, p. 550; Acts 1940, ch. 341, p. 585; Acts 1940, ch. 343, p. 593; Acts 1942, ch. 317, p. 446; Michie's Code of 1942, section 1887 (93) ff.

taken before the Commission, together with its findings of fact and decision thereon. The lower court reversed the order of the Commission, holding that Collins was not an employer within the meaning of the Act during either 1941 or 1942. From that decree the Unemployment Compensation Commission has appealed under the provisions of the same section.

Collins lives in Caroline county, Virginia, and is a farmer. For a number of years he has also been intermittently engaged in the sawmill business, cutting timber from his own lands and that purchased on the lands of others. In the year 1937 he filed reports with the Unemployment Compensation Commission and paid the pay-roll taxes on those whom he employed in connection with the operation of his sawmills. As of January 1, 1940, he sought and obtained his release from liability as an employer under the Act. From September to December, 1940, and from January to May, 1941, he operated one or more sawmills, but his operation in each term was just short of the statutory period of twenty weeks necessary to render him amenable to the Act. (Section 2 (i) (1); Michie's Code of 1942, section 1887 (94) (i) (1).)

On July 1, 1941, Collins entered into a written contract with George T. Hester, the material part of which is as follows:

" * * * First, L. E. Collins does sell to George T. Hester one Lane sawmill complete with one International power unit for the sum of fifteen hundred dollars ($1500) of which one hundred dollars ($100) cash is paid, balance to be paid in equal payments of one hundred dollars ($100) a month until paid with six per cent. (6%) interest; said L. E. Collins is to retain title of same in event said George T. Hester fails to pay for the mill or keep up the payments after six months the mill shall be returned to said L. E. Collins without cost to him whatever. Any money having been paid shall be kept.

"Said George T. Hester agrees to pay eight dollars ($8) stumpage for all timber cut. Said L. E. Collins agrees to pay

twenty dollars ($20) for the lumber manufactured and put on the yard of F. E. Bowies or in the field near the mill as said L. E. Collins may direct."

Hester had previously been employed by Collins as a foreman and saw filer at a varying wage scale not in excess of thirty-five cents per hour. Hester operated the mill from the date of the contract until December, 1941, during which time he cut lumber from timber owned and located on the lands of Collins, most of which was sold and delivered to Collins and was cut according to the specifications laid down by the latter. Collins testified that he thought that "on several occasions" Hester "did sell some" lumber to other customers, but the quantity is not specified and concededly it was relatively insignificant. The lumber which Hester cut for Collins was paid for in accordance with the terms of the contract.

Hester's employees included some of those who had formerly worked for Collins, as well as others. Both Hester and Collins testified that these employees were hired and paid out of the latter's funds, and were entirely under the supervision and control of Hester, who kept the record of their working time, wages, etc.

In December, 1941, although the entire tract of timber had not been cut, work under the contract was terminated. Hester testified that this was because he "couldn't get a crew." At any rate, Hester had not paid more than $100 on account of the purchase price of the mill and Collins repossessed it, as he says, under the terms of the contract.

After the termination of the contract with Hester, Collins operated the mill from January, 1942, until May of that year, with Hester as one of his employees. On May 2, 1942, Collins entered into a written contract with Peerman Ayers which provided as follows:

" * * * Said L. E. Collins does agree to rent one Frick Sawmill complete to Peerman Ayers for the sum of fifty cents ($.50) per thousand; said rent to be paid weekly.

"Said Peerman Ayers agrees to cut, fell, manufacture and deliver that certain tract of timber known as Palestine one

mile southeast of Penola, estimated to be about one hundred thousand feet; delivery to be made at Penola, Virginia, for which he is to receive twelve dollars ($12) per thousand.

"This contract does not apply to any other timber."

Ayers, who had previously worked as a laborer for Collins, operated the mill under this contract for approximately eight weeks, or until July 1, 1942, by which time the particular tract of timber mentioned in the contract had been cut. Ayers likewise employed some of Collins' former employees. Both he and Collins testified that Ayers employed and paid the men, kept the record of their time, and that the mill operations were entirely under the supervision and control of Ayers. During the operation of the contract, Ayers paid the stipulated rental for the use of the mill, and Collins paid him the stipulated amount for the lumber cut.

The appellee concedes that if Hester and Ayers, or either of them, were in his "employment," as defined in section 2 (j) (1) of the Act (Michie's Code of 1942, section 1887 (94) (j) (1) ), then the helpers or employees of Hester and Ayers were likewise in the appellee's employment, under the provisions of the last sentence of section 2 (h) of the Act (Michie's Code of 1942, section 1887 (94) (h) ). It is also conceded that the total number of employees would then be eight or more for the statutory period of twenty weeks and that Collins would be amenable to the Act.

The pivotal question then is, Were Hester and Ayers, or either of them, in the "employment" of Collins within the meaning of the Act?

Section 2 (j) (1) of the Act (Michie's Code of 1942, section 1887 (94) (j) (1) ),[2] provides: " 'Employment' means any service * * * performed for remuneration or under any contract of hire, written or oral, express or implied."

---

[2] The Acts of 1942, ch. 317, p. 446, makes no change in this subsection as found in the Acts of 1940, ch. 333, p. 538.

Section 2 (j) (6) of the Act (Michie's Code of 1942, section 1887 (94) (j) (6),[3] provides as follows:

"Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless;

"(A) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(B) such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; or such individual, in the performance of such service, is engaged in an independently established trade, occupation, profession or business."

In determining whether Hester and Ayers, or either of them, were in the "employment" of Collins, as defined in the Act, there are these two issues to be decided: (1) Under the contracts as interpreted and executed by the parties, were "services performed" "for remuneration" by either of them for Collins? (2) If so, did such services come within the exceptions of paragraph 2 (j) (6) of the Act?

The appellee concedes that his contract with Ayers was one for "services performed" "for remuneration" within the meaning, of the Act. This is necessarily so because under the contract Ayers was to "cut, fell, manufacture and deliver that certain tract of timber known as Palestine" for Collins at a stipulated price per thousand feet.

But the appellee earnestly insists that under his contract with Hester there were to be no "services performed" within the meaning of the Act. He insists that the contract provided, first, for the sale and purchase of the sawmill, and second, for a sale by him of stumpage to Hester, and a purchase by him (Collins) of the manufactured lumber cut from the stumpage by Hester.

It is true that the contract so provides on its face. But we are not here dealing with a suit on the contract, nor

---

[3] See note 2.

are we primarily concerned with its interpretation. Our inquiry is whether Hester, in cutting the timber owned by Collins and manufacturing it into finished lumber, was performing services for Collins and was in his employment under the Act. In attempting to solve that question we are not so much concerned with what the contract says as we are with the actual practice of the parties which supplemented their written agreement. See 48 Am. Jur., Social Security, Unemployment Insurance, etc., sec. 15, p. 524; *In re Morton*, 284 N. Y. 167, 30 N. E. (2d) 369, 372; *Industrial Comm. v. Northwestern Mut. Life Ins. Co.*, 103 Colo. 550, 88 P. (2d) 560, 565.

In *In re Morton, supra*, the highest court of New York upheld the finding of the Unemployment Insurance Appeal Board that, "the true relationship was not evinced by the contract but that in addition the actual practice of the parties which supplemented the written contract had to be taken into account." The court there pointed out that under the terms of the act, an express agreement to waive the benefit of the act was void,[4] and that *a fortiori* a written agreement between the parties would not preclude an examination into their actual relationship.

In *Industrial Comm. v. Northwestern Mut. Life Ins. Co., supra*, it was held that in determining whether the term "employment," as defined in the Unemployment Compensation Act, includes the services of life insurance agents, the court was "concerned primarily with what is done under the contract and not with what the contract says."

In *Unemployment Compensation Comm. v. Harvey*, 179 Va. 202, 18 S. E. (2d) 390, we held that the relationship between the parties was determined not by the contract, which the parties there termed a "lease," but rather by the actual relationship which existed between them.

In the case at bar, Collins owned certain timber which he desired to convert into lumber. He also owned a saw-

---

[4] A similar provision is found in section 15 (a) of the Virginia Act (Acts 1936-7, Ex. Sess., ch. 1, at page 22; Michie's Code of 1942, section 1887 (107) (a)).

mill with which the timber could be cut. He entered into a contract with Hester, as the result of which the latter took possession of the sawmill and cut the timber for Collins. While Hester was to pay $8.00 per thousand feet for the stumpage cut by him, Collins was to pay Hester $20.00 per thousand feet for the finished lumber. The effect of this, of course, was that Hester cut the lumber for Collins at the net sum of $12.00 per thousand feet.

Moreover, the purchase of the sawmill by Hester was never completed. In fact, he paid only the $100 cash instalment required by the contract. And despite the fact that Collins was paying Hester the net sum of $12.00 per thousand feet for the lumber cut, which, of course, would have enabled Collins to have deducted the purchase-price instalments as they fell due, he did not do so. Again, in his written report to the Unemployment Compensation Commission of his status as an employer, Collins stated that he had "leased the mill" to Hester "who operated same under contract for me, cutting my timber at so much per thousand feet." It is true that later Collins filed an amended report with the Commission in which he stated: "I sold this mill to George T. Hester and he operated same in his name, cutting timber for me on contract basis so much per thousand." In the meantime, Hester had filed a report with the Commission in which he stated that he had "merely leased a sawmill from L. E. Collins, operated it for 6 months for myself and then turned it back to him and went back to work for him as an employee in January, 1942." All of which goes to show that the parties never intended to complete the sale and purchase of the mill, and that Hester's operation of it was only temporary.

In effect, then, the arrangement was this: Collins furnished the equipment to Hester at a nominal amount, and Hester cut the timber for Collins at the net sum of $12.00 per thousand feet. Certainly, then, Hester performed services for Collins for remuneration.

Having determined that "services" were "performed" by both Hester and Ayers for Collins "for remuneration," un-

der section 2 (j) (6) of the Act (Michie's Code of 1942, section 1887 (94) (j) (6)), such services "shall be deemed to be employment subject to this act", unless (A) the individual worker is free from control in fact and free from the right of control; and unless (B) the service is either outside the usual course of the business for which it is performed; or is performed outside of all the places of business of the enterprise for which it is performed; or the individual worker, in the performance of the service, is engaged in an independently established trade, occupation, business or profession.

It will be observed that the two exceptions (A) and (B) are in the conjunctive, and, therefore, in order to be exempt from the Act, the alleged employer must have shown himself to be within the exception of paragraph (A), and within one of the alternative exceptions enumerated in paragraph (B). *Unemployment Compensation Comm. v. Harvey, supra* (179 Va., p. 216, 18 S. E. (2d), p. 396).

Assuming that Collins has shown that both Hester and Ayers were free from his control or direction, as specified in paragraph (A), it does not appear, we think, that he has met the requirements of any of the specifications in paragraph (B).

In the first place, the service performed by both Hester and Ayers was not "outside the usual course of the business" for which it was performed. Collins was and had been for years engaged in the timber, lumber and sawmill business. Under the arrangements made, both Hester and Ayers continued in the lumber and sawmill business.

Nor was the service "performed outside of all the places of business of the enterprise for which such service is performed." It is true that Hester and Ayers did not occupy the same offices which Collins occupied during the operations. But both Hester and Ayers worked on Collins' premises, cut Collins' timber, and operated in precisely the same place or places where he (Collins) would have operated if

he had undertaken the work himself. Therefore, the places where the timber was being cut were necessarily Collins' "places of business."

In *Life, etc., Ins. Co.* v. *Unemployment Compensation Comm.*, 178 Va. 46, 56, 59, 16 S. E. (2d) 357, 361, we held that the "places of business" were not confined to the headquarters or office premises of the alleged employer, but embraced all of the latter's places of business, including the territory in which the alleged employees, who were in that case insurance agents, worked.

The same principle applies here. When Collins assigned a certain tract of timber to Hester and Ayers to cut, the service performed by each of them was not outside "of all the places of business" of Collins, but was within, at least, some of them.

Nor do we think that either Hester or Ayers, in the performance of their services for Collins, was "engaged in an independently established trade, occupation, profession or business," within the meaning of the last alternative in paragraph (B) of the section. It will be observed that in order to escape the provisions of the statute the requirement is not that the alleged employee be engaged in an "independent business." He must be engaged in one that is "independently established." An "established" business is one that is permanent, fixed, stable, or lasting. Here neither the business of Hester nor that of Ayers, which was undertaken pursuant to the respective arrangements with Collins, meets this test. On the contrary, each was impermanent and short-lived and was confined to a single transaction. Neither had been in business before or was in business after his arrangement with Collins was terminated. After the Hester contract was terminated he reverted to his former status as a mere employee of Collins. While Ayers, after the completion of his contract, did not resume his former status, it is a fair inference from his testimony to say that this was due to the fact that Collins did not at that time resume his sawmill operations.

Moreover, we think it is clear under the evidence that neither Hester nor Ayers was conducting a business which was set up and established "independently" of that of Collins. Each was merely carrying on Collins' business. In the year 1941, Collins conducted his sawmill business in his own name for a period of seventeen or eighteen weeks, or just short of the period of twenty weeks required to bring him within the operation of the statute. He then delivered his equipment to Hester who, in effect, continued the identical operation which Collins would have continued if he had not attempted to evade the consequences of the Act. The same is true of the year 1942 in which the arrangement was made with Ayers. No doubt the carefully worded language of the statute, which we have analyzed, was designed to meet a situation of this character. An employer may not evade the consequences of the Act by the simple expedient of converting, for a short period, his employees into "lessees" or "vendees" of the identical equipment through the use of which these employees have performed services for him.

The Unemployment Compensation Act is primarily a public welfare measure and the levying of taxes thereunder is merely incidental to its purpose, which is to assure a measure of security against the hazard of unemployment in our economic life. Accordingly, we agree with the view that it should be liberally construed to effect its beneficent aims. *Singer Sewing Machine Co.* v. *State Unemployment Compensation Comm.*, 167 Or. 142, 103 P. (2d) 708, 116 P. (2d) 744, 138 A. L. R. 1398. As we pointed out in *Unemployment Compensation Comm.* v. *Harvey, supra* (179 Va., at page 217, 18 S. E. (2d), at page 397), the judicial trend is to hold that the Act covers borderline cases such as that now before us.

On the whole we think the Unemployment Compensation Commission correctly found that both Hester and Ayers were in the "employment" of Collins within the meaning of the Act, and that Collins was, therefore, amenable to its provisions.

Accordingly we reverse the decree of the lower court and will enter a decree dismissing the petition for review and reinstating the order of the Unemployment Compensation Commission.

*Reversed.*