COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Annunziata
Argued at Richmond, Virginia


BROTHERS CONSTRUCTION COMPANY, INC.
                                        OPINION BY
v.   Record No. 0255-97-2        JUDGE JAMES W. BENTON, JR.
                                    JANUARY 13, 1998
VIRGINIA EMPLOYMENT COMMISSION


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Randall G. Johnson, Judge

        Daniel M. Press (Chung & Press, P.C., on
        briefs), for appellant.

        John B. Purcell, Jr., Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General; Lisa J. Rowley, Assistant Attorney
        General, on brief), for appellee.


     Brothers Construction Company, Inc. contends the circuit

court judge erred in upholding the Virginia Employment

Commission's ruling that Brothers was not exempt from the payment

of unemployment insurance taxes on the remunerations paid to its

siding installers.  See Code § 60.2-212(C).  We affirm the

judgment because the evidence supports the commission's findings

of facts and conclusions of law that (1) services were performed

by individuals for remuneration, (2) the installers were not free

from Brothers' direction and control, (3) the services were not

performed outside all of Brothers' places of business, and (4)

the installers were not engaged in independently established

trades, occupations, professions or businesses.

Following a random audit for unemployment insurance tax compliance, the commission issued to Brothers, which was then named Brothers Siding Company, Inc., a letter containing findings of fact and a determination that individuals who installed siding for Brothers performed services for Brothers that constitute employment as defined in Code § 60.2-212. Brothers requested a hearing pursuant to Code § 60.2-500.

Testimony at the hearing proved that Brothers, which had then changed its name from Brothers Siding Company, Inc., to Brothers Construction Company, Inc., is in the business of installing siding, gutters, and downspouts on residential and other buildings. Charlie Hwang, the president of Brothers, testified that after Brothers obtained contracts to install siding on buildings, Brothers hired installers to work at job sites located throughout Virginia, Maryland, and Washington, D.C. The testimony established that during a five year period, Brothers issued two hundred federal tax forms No. 1099 to installers who performed work for Brothers.

Hwang orally negotiated with the installers, most of whom did not speak English very well, to pay them at a set rate per square foot of installed siding. Each of the installers that he hired signed a "self-employment contract" with Brothers that reads as follows:

> I understand that I am an independent contractor, and that I am responsible for all tax withholdings, FICA and self-employment

> taxes due.  I have specific control over the
> order and sequence of work performed, time of
> completion, and the hours worked.  I am paid
> by job production or by completed job, but
> not by my time.  Due to these factors, I
> realize that I have the opportunity for
> [entrepreneurial] Profit (and Loss).  I also
> understand that I will receive a form 1099
> from BROTHERS SIDING CO. so that I may file
> the proper Self-Employment forms due at the
> end of the year.  I understand also that I am
> responsible for filing a quarterly estimate
> of federal taxes to cover Self-Employment
> Income reported to me by BROTHERS SIDING CO.

Brothers required the installers to obtain all of their materials from Brothers' warehouse and to provide their own tools and transportation to the job sites.  Even though Brothers supplied all the siding materials for the installers, Hwang testified that Brothers only employed a few "service work" employees who fixed damaged siding.  Otherwise, none of Brothers' employees installed siding; they only installed gutters and downspouts.

Brothers set deadlines for completion of the work.  If any of the work was defective, Brothers required the installers to return to the site and make the requisite repairs.  The installers were paid each week on Saturday based upon the square feet of material installed that week.  Many of the installers hired work crews.  Hwang testified that Brothers did not supervise the installers or the hiring of the work crews.

The evidence proved that Brothers reported, as employees for unemployment tax purposes, all its corporate executives, officers, warehouse help, and administrative staff.  However,

- 3 -

Brothers issued to the siding installers federal tax forms No. 1099 showing "non-employee compensation" paid. A random audit by the commission's tax auditor disclosed that approximately two hundred tax forms No. 1099 were issued to these siding installers between 1989 and 1991. Upon investigation, the auditor found that most of the identification numbers on those tax forms were individual Social Security numbers. The auditor eliminated from his investigation any of the two hundred names of installers that he discovered were business names. The auditor also found that only three of fifty installers he randomly selected to check had business licenses in three of the counties in Northern Virginia where Brothers performed siding installation contracts. Based on this information, the auditor opined that the installers were not independent contractors and issued to Brothers a Notice of Tax Liability Determination.

Following the presentation of the evidence at the hearing, the commission made extensive findings and concluded that "the services performed by all installers and their assistants . . . constituted services in employment so as to subject [Brothers] to the liability for paying unemployment insurance taxes on the remuneration paid for such services." The commission ordered Brothers to file amended payroll tax reports to cover the remuneration in question. Brothers filed for review of that decision in the Circuit Court of the City of Richmond. See Code § 60.2-500(B)(1). The circuit court judge affirmed the

- 4 -

commission's decision.

The taxation provision of the Act provides that "[i]n any judicial proceedings . . . , the Commission's findings of facts, if supported by the evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Code § 60.2-500(B)(1). For unemployment compensation purposes, "[s]ervices performed by an individual for remuneration shall be deemed to be employment." Code § 60.2-212(C). The parties agree that the commission has the initial burden of proving that services were performed by individuals for remuneration. See Virginia Employment Comm'n v. Thomas Regional Directory, Inc., 13 Va. App. 610, 612, 414 S.E.2d 412, 414 (1992).

In our review of the law, we are guided by the following principles:

> The meaning of "employment" in the unemployment compensation context is controlled by statute. . . . The Act is to be liberally construed to effect its beneficent purpose and in borderline cases "employment" should be found to exist. Exemptions in the Act should be strictly construed against the alleged employer, the rule requiring liberal construction in favor of the taxpayer not being applicable. As defined in the Act, the term "employment" should be accorded a broader and more inclusive meaning than in the common-law context of master and servant.

Virginia Employment Commission v. A.I.M. Corp., 225 Va. 338, 345-46, 302 S.E.2d 534, 539 (1983) (citations omitted). In addition, we must consider the evidence in the light most

favorable to the findings of the commission, and we will not disturb the commission's findings unless the evidence, as a matter of law, is insufficient to support those findings. Virginia Employment Comm'n v. Peninsula Emergency Physicians, Inc., 4 Va. App. 621, 626, 359 S.E.2d 552, 554 (1987).

## Services Performed by Individuals

Brothers contends the commission failed to meet its burden of proof because the evidence did not establish that services were performed by individuals. Brothers argues that even if the installers were sole proprietorships, they did not fit within the definition of "individual" contained in Code § 60.2-212(C) because most of the installers hired assistants. The commission found that Brothers was liable for unemployment taxes for the installers and the "individuals assisting the installers." The record supports this finding of fact.

The evidence proved that all but three of the two hundred installers used Social Security numbers that were issued to individuals. The auditor eliminated any installers from the list that were business entities or that had business licenses. The evidence provides no rational basis to support a finding that the remaining names on the list were anything other than individuals as that term is commonly used. Therefore, the commission met its burden of proving that services were performed by individuals for remuneration. The evidence proved that individual installers and their assistants performed work for Brothers and that Brothers

- 7 -

paid them for these services.

<u>Exemptions</u>

After the commission met its burden of proof, the burden then shifted to Brothers to prove by a preponderance of the evidence that it qualified for an exemption under Code § 60.2-212(C).  See <u>Thomas Regional Directory</u>, 13 Va. App. at 612, 414 S.E.2d at 414.  Code § 60.2-212(C) provides as follows:

> Services performed by an individual for remuneration shall be deemed to be employment subject to this title unless:
>
> 1.  Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and
>
> 2.  Such service is either outside the usual course of the business for which such service is performed, or such service is performed outside of all the places of business of the enterprise for which such service is performed; or such individual, in the performance of such service, is engaged in an independently established trade, occupation, profession or business.

"[I]f the putative employer fails to demonstrate that it is within the terms of both subsection (C)(1) and one of the three exceptions under subsection (C)(2), it fails to meet its burden of proof and an 'employment' relationship exists."  <u>Thomas Regional Directory</u>, 13 Va. App. at 612, 414 S.E.2d at 414. Furthermore, the Supreme Court has ruled that these exemptions "should be strictly construed against the alleged employer." <u>A.I.M. Corp.</u>, 225 Va. at 346, 302 S.E.2d at 539.

## Control and Direction

Brothers points to the "self-employment contract" signed by all of its installers as evidence of Brothers' lack of control and direction over the installers. However, "the existence of the master-servant relationship under the Unemployment Act 'does not depend upon how the parties designate each other in their contract.' Rather, the individual's status in relation to the alleged employer is to be determined from all the facts and circumstances adduced by the evidence, including the provisions of any written agreement." A.I.M. Corp., 225 Va. at 347, 302 S.E.2d at 539 (citations omitted). See Thomas Regional Directory, 13 Va. App. at 614-15, 414 S.E.2d at 415-16.

"The power of control is the most significant indicium of the employment relationship." Richmond Newspapers, Inc. v. Gill, 224 Va. 92, 98, 294 S.E.2d 840, 843 (1982). "The potential power of control, not the actual exercise of control, is the important element." A.I.M. Corp., 225 Va. at 347, 302 S.E.2d at 539-40. See Hann v. Times-Dispatch Publ'g Co., 166 Va. 102, 106, 184 S.E. 183, 184-85 (1936). This right of control includes not only the power to specify the result to be accomplished but also includes the power over the "performance of such services, both under his contract of services and in fact." Code § 60.2-203(C)(1). "If the party for whom the work is to be done has the power to direct the means and methods by which the other does the work, an employer-employee relationship exists." A.I.M. Corp., 225 Va. at

347, 302 S.E.2d at 540. "Among the tests used to determine if the right to control exists are: whether instructions have to be obeyed, and whether either of the parties possesses the right to terminate services at will without incurring liability to the other." Id. Another "'means of ascertaining whether or not this right to control exists is the determination of whether or not, if instructions were given, they would have to be obeyed.'" Hann, 166 Va. at 107, 184 S.E. at 185 (citation omitted).

The evidence and the reasonable inferences to be drawn from the evidence proved that Brothers had the right to instruct the installers as to the work that was to be done and the manner in which that work would be performed. While the installers provided their own tools and transportation, Brothers provided all of the materials for completion of the job. The installers were not free to choose their own materials or purchase materials from other sources. Furthermore, the work had to be performed to Brothers' standards, specifications, and satisfaction. Although the installers were not under constant supervision, Brothers conducted periodic inspections. If, upon inspection, Brothers discovered that the work was defective, Brothers required the installers to return to the job site to correct the mistakes according to Brothers' specifications. If the installers' work was particularly unsatisfactory, the installers would not be hired for another job. Brothers also retained the right to terminate the installers from a project at will. Thus, we cannot

- 11 -

say the commission erred as a matter of law in finding that Brothers exercised control over the installers.

Although the commission's finding that Brothers exercised control over the installers is dispositive of the case, see Code § 60.2-212(C), we briefly discuss the additional requirements needed to prove an exemption under Code § 60.2-212(C)(2) because the commission addressed them. The exemptions of Code § 60.2-212(C)(2) require proof that service performed by an individual for remuneration "is either outside the usual course of the business for which such service is performed, or such service is performed outside of all the places of business of the enterprise for which such service is performed; or such individual, in the performance of such service, is engaged in an independently established trade, occupation, profession or business." The commission found that Brothers failed to prove those exemptions.

### Outside Place of Business

Brothers concedes that it does not meet the first exception contained in subsection (C)(2): "[s]uch service is . . . outside the usual course of the business for which such service is performed." However, Brothers argues that it operates only from its headquarters in Lorton, Virginia, and that the installers' services were performed throughout Maryland, Virginia, and Washington, D.C. on sites that were not its places of business. However, "places of business" are not confined to the

headquarters or office premises of the employer but embrace all of the sites in the territory in which the alleged employees worked.  See Life & Casualty Ins. Co. v. Unemployment Compensation Comm'n, 178 Va. 46, 56, 16 S.E.2d 357, 361 (1941). The installers "operated in precisely the same place or places where [Brothers] would have operated if [it] had undertaken the work [it]self."  Unemployment Compensation Comm'n v. Collins, 182 Va. 426, 436-37, 29 S.E.2d 388, 393 (1944).  In each instance, the installers worked to install siding on buildings that Brothers had agreed by contract to service.  Thus, Brothers did not meet its burden of proving that the services provided by the installers were performed outside of all Brothers' places of business.

Independently Established Businesses

"[I]t is elemental that one engaged in an independent enterprise, business or profession has a proprietary interest therein to the extent that he can operate it without hindrance from any individual or force whatsoever."  Life and Casualty, 178 Va. at 55-56, 16 S.E.2d at 361.

> "It will be observed that in order to escape the provisions of the statute the requirement is not that the alleged employee be engaged in an 'independent business.'  He must be engaged in one that is 'independently established.'  An 'established' business is one that is permanent, fixed, stable, or lasting."

Peninsula Emergency Physicians, 4 Va. App. at 630, 359 S.E.2d at 557 (quoting Collins, 182 Va. at 437, 29 S.E.2d at 393).

- 13 -

The evidence failed to prove that the installers either had a proprietary interest or were engaged in independently established businesses that were permanent, stable and lasting. Although the installers had their own tools, the evidence proved that Brothers supplied <u>all</u> the materials to perform the work. Brothers presented no evidence that the installers had business cards, business licenses, business phones, or business locations to support a claim of a lasting, independently established business. See <u>Thomas Regional Directory</u>, 13 Va. App. at 616, 414 S.E.2d at 416. No evidence proved that the installers received income from any party other than Brothers. See <u>id.</u> at 615, 414 S.E.2d at 416. "[T]he failure to produce evidence on a factor is held against the party having the burden of proof, not against the party that does not have the burden of proof." <u>Id.</u> at 616, 414 S.E.2d at 416.

For these reasons, we hold that the evidence was sufficient to support the commission's finding that the services performed by the installers and their crews constituted employment so as to subject Brothers to unemployment insurance tax liability. For these reasons, we affirm the judgment upholding the commission's decision.

<u>Affirmed.</u>