COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Overton
Argued at Richmond, Virginia


VIRGINIA EMPLOYMENT COMMISSION
                                          OPINION BY
v.         Record No. 1373-97-2     JUDGE LARRY G. ELDER
                                         APRIL 21, 1998
PORTER-BLAINE CORPORATION


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     Theodore J. Markow, Judge

            John B. Purcell, Jr., Assistant Attorney
            General (Richard Cullen, Attorney General, on
            brief), for appellant.

            Thomas F. Hennessy, III (SuAnne L. Hardee;
            Hardee & Hennessy, P.C., on brief), for
            appellee.


        The Virginia Employment Commission ("Commission" or "VEC")

appeals the circuit court's orders (1) overruling its motion to

dismiss Porter-Blaine Corporation's petition for judicial review

and (2) reversing its decision that the service performed for

Porter-Blaine Corporation by several drywall installers

constituted "employment" under Code § 60.2-212.  The Commission

contends the circuit court erred when it (1) concluded that

Porter-Blaine Corporation's service of its petition for judicial

review upon the Commissioner of the VEC satisfied the "service"

requirement of Code § 60.2-500(B) and (2) concluded that

Porter-Blaine Corporation had met its burden of proof to qualify

for the exemption from tax liability found in Code § 60.2-212(C).

 For the reasons that follow, we reverse and remand.

I.

FACTS

Porter-Blaine Corporation ("Porter-Blaine") is in the business of installing drywall for general contractors engaged in the construction of residential and commercial buildings. It has twenty-eight employees, including "laborers, secretarial staff, superintendents, [and] repair people." In some of its residential projects, Porter-Blaine uses between twenty and thirty workers on a job-by-job basis to hang and finish drywall boards and to apply plaster to walls ("drywall installers"). Porter-Blaine considered these drywall installers to be independent contractors. As such, it excluded the remuneration paid to these workers from its calculation of its tax liability under the Unemployment Compensation Act ("Act").

In 1994, the Commission conducted an audit of Porter-Blaine's payroll for the years 1991, 1992, and 1993. On November 10, 1994, the Commission determined that the work performed by the drywall installers was "employment" under Code § 60.2-212 and that Porter-Blaine was required to pay taxes on the remuneration it paid to these workers. Porter-Blaine appealed this determination. Following a hearing, a special examiner made extensive factual findings and concluded that the service performed by the drywall installers for Porter-Blaine was "employment" under Code § 60.2-212. Specifically, the special examiner concluded that Porter-Blaine failed to prove that the

drywall installers were either free from its control as required by Code § 60.2-212(C)(1) or independently established businesses under Code § 60.2-212(C)(2).  Regarding the issue of control, the special examiner found that Porter-Blaine possessed the right to terminate the services of drywall installers "at will."

On June 13, 1996, Porter-Blaine filed a timely petition for judicial review of the special examiner's decision.  The petition contained a certificate of service signed by Porter-Blaine's counsel stating that "two copies of the [petition were] sent via overnight delivery, this 12th day of June, 1996 to Dr. Thomas J. Towberman, Commissioner, Virginia Employment Commission . . . ."  (Emphasis in original).  The Commission concedes that the Commissioner received these copies of the petition within the statutorily prescribed time period.  On August 13, William D. Hester, Sr., who was an authorized process server, personally delivered two copies of Porter-Blaine's petition to the Commission.  On October 3, the Commission moved to dismiss Porter-Blaine's petition for judicial review on the ground that Porter-Blaine had failed to comply with the "service" requirement of Code § 60.2-500(B)(1).  The circuit court overruled the Commission's motion.

The circuit court then reversed the decision of the special examiner.  It first concluded that "all of the Commission's findings of fact are supported by the record."  However, it then held that the special examiner's legal analysis was erroneous.

3

The circuit court concluded that the evidence offered by Porter-Blaine was sufficient as a matter of law to prove that "it [did] not control the installers in their performance of their work" and that the drywall installers were engaged in independently established businesses.

## II.

### "SERVICE" UNDER CODE § 60.2-500(B)(1)

The Commission first contends the circuit court erred when it refused to dismiss Porter-Blaine's petition for judicial review due to insufficient service. It argues that Porter-Blaine's mailing of two copies of its petition to the Commissioner, although timely, was not sufficient to effect "service" under Code § 60.2-500(B)(1). It also argues that, although it was eventually served with two copies of the petition by a statutorily authorized process server, this personal service was untimely because it was effected more than two months after Porter-Blaine filed its petition with the circuit court. Because two copies of Porter-Blaine's petition reached the Commissioner within the time prescribed by law, we conclude that the circuit court did not err when it denied the Commission's motion to dismiss for insufficient service.

Under Code § 60.2-500(B)(1), an employer may seek judicial review of a determination by the Commission regarding the employer's tax liability for particular services.[1] Because the

---

[1] Code § 60.2-500(B)(1) states in relevant part:

4

proceedings for judicial review of the Commission's decisions are governed by statute, the mandatory requirements for perfecting a judicial review must be met in order to confer jurisdiction upon the circuit court.  See 73A C.J.S. Public Administrative Law and Procedure § 208 (1983); cf. Mayo v. Dept. of Commerce of the Commonwealth, 4 Va. App. 520, 522-23, 358 S.E.2d 759, 761 (1987).

Regarding the requirement for service of an employer's petition upon the Commissioner, Code § 60.2-500(B)(1) does not prescribe any particular method of delivery.  Instead, the statute merely states that "[s]ervice of two copies of such petition upon the Commissioner shall be deemed completed service . . . ."  Code § 60.2-500(B)(1).  Moreover, the language of the statute regarding the service requirement is ambiguous. That statute refers only to "service," a term that is capable of

> Judicial review of [the Commission's decisions regarding the tax liability of an employer] may be initiated within thirty days after mailing notice of such findings and determination to the employing unit or, in the absence of mailing, within thirty days after delivering such notice and determination, in the Circuit Court of the City of Richmond.  Such judicial review shall be commenced by the filing of a petition, which need not be verified but which shall state the grounds upon which a review is sought.  <u>Service of two copies of such petition upon the Commissioner shall be deemed completed service</u> and such petition shall be filed with the clerk of the court within five days after service thereof.

(Emphasis added).

being reasonably understood as permitting various modes of delivery. See Black's Law Dictionary 1368-69 (6th ed. 1990) (stating that, in the procedural context, "service" can refer to personal service, substituted service, service by publication, or service by mail).

Although Code § 60.2-500(B)(1) does not prescribe the permissible methods for serving petitions for judicial review upon the Commissioner, Code § 8.01-287 does. Code § 8.01-287 states that "[u]pon commencement of an action, process shall be served in the manner set forth in [Chapter 8 of Title 8.01 of the Code] and by the Rules of the Supreme Court." (Emphasis added). The General Assembly defined "action" when used in Title 8.01 to "include all civil proceedings whether at law, in equity, or statutory in nature and whether in circuit courts or district courts." Code § 8.01-2 (emphasis added). Petitions for judicial review under Code § 60.2-500(B) are statutory creations and, as such, they are included among the "actions" covered by Code § 8.01-287. Thus, the "service" of a petition for judicial review under Code § 60.2-500(B)(1) must comply with the requirements of Chapter 8 of Title 8.01 of the Code and Rule 2A of the Rules of the Supreme Court.

Although Chapter 8 of Title 8.01 imposes restrictions upon how personal service of civil proceedings may be validly effected, the Chapter also contains a "curing statute." Garritty v. Virginia Dept. of Soc. Services, 11 Va. App. 39, 42 n.2, 396

S.E.2d 150, 151 n.2 (1990) (citing Code § 8.01-288).  Code

§ 8.01-288 states:

> [e]xcept for process commencing actions for divorce or annulment of marriage or other actions wherein service of process is specifically prescribed by statute, <u>process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted as provided in this chapter</u>.

(Emphasis added).  Code § 8.01-288 applies to the service of

petitions for judicial review under Code § 60.2-500(B)(1)

because, as previously discussed, Code § 60.2-500(B)(1) does not

"specifically prescribe" a particular method of service.

Applying these principles to this case, we hold that the

circuit court did not err when it denied the Commission's motion

to dismiss Porter-Blaine's petition for judicial review due to

insufficient service.  Although Porter-Blaine's service of its

petition upon the Commissioner by overnight mail failed to comply

with the requirements for personal service set forth in Chapter 8

of Title 8.01, the Commission conceded in its brief that the

Commissioner actually received the two copies of the petition "by

mail within the time limits prescribed by law."  Thus, because

the two copies of Porter-Blaine's petition reached the

Commissioner in a timely fashion, its service of the petition was

"sufficient" under Code § 8.01-288.[2]

---

[2]Because we hold that Porter-Blaine effected sufficient service of its petition upon the Commissioner in June 1996, we need not address whether the personal service of the petition by

                                    III.

                  "EMPLOYMENT" UNDER CODE § 60.2-212

     The Commission contends the circuit court also erred when it

concluded that the work performed by the drywall installers for

Porter-Blaine was not "employment" under Code § 60.2-212(C).  We

agree.

                                    A.

     Code § 60.2-212(C) delineates the services that are

considered "employment" for the purpose of calculating an

employer's tax liability under the Act.  Code § 60.2-212(C)

states that:

           Services performed by an individual for
           remuneration shall be deemed to be employment
           subject to this title unless:

           1.  Such individual has been and will
           continue to be free from control or direction
           over the performance of such services, both
           under his contract of service and in fact;
           and

           2.  Such service is either outside the usual
           course of the business for which such service
           is performed, or such service is performed
           outside of all the places of business of the
           enterprise for which service is performed; or
           such individual, in the performance of such
           service, is engaged in an independently
           established trade, occupation, profession or
           business.

Service that satisfies both Code § 60.2-212(C)(1) and (C)(2) does

not constitute "employment" under the Act, and employers are not

_____

an authorized process server more than two months after it was
filed in the circuit court was "untimely."

                                    8

required to include the remuneration paid for such service as "wages payable for employment" when calculating their tax liability to the Unemployment Compensation Fund.

In a proceeding to determine whether particular service performed by an individual is "employment" for tax purposes under the Act, the burden is initially on the Commission to prove that service was performed for remuneration. See Virginia Employment Comm'n v. Thomas Regional Directory, Inc., 13 Va. App. 610, 612, 414 S.E.2d 412, 414 (1992). Once the Commission satisfies this burden, the burden shifts to the alleged employer to prove that the service falls outside the statutory definition of employment. See id.; Life & Casualty Ins. Co. of Tennessee v. Unemployment Compensation Comm'n, 178 Va. 48, 57, 16 S.E.2d 357, 361 (1941). The alleged employer must "establish that it meets both the criteria of subsections (C)(1) and one of the three exceptions of subsection (C)(2)." Thomas Regional Directory, Inc., 13 Va. App. at 612, 414 S.E.2d at 414. If the employer fails to meet this burden of proof, then "an 'employment' relationship exists." Id. at 612, 414 S.E.2d at 414-15.

On appeal, the Commission's findings of fact are conclusive "if supported by the evidence and in the absence of fraud." Code § 60.2-500(B)(1). In addition, we view the evidence in the light most favorable to the findings made by the Commission. See Virginia Employment Comm'n v. Peninsula Emergency Physicians, Inc., 4 Va. App. 621, 626, 359 S.E.2d 552, 554 (1987). Unless

9

the Commission's factual findings are erroneous, our jurisdiction is confined to questions of law. Code § 60.2-500(B)(1).

In considering whether Code § 60.2-212 was correctly applied in a particular case, we are guided by several well established tenets of our jurisprudence under the Act. First, because the Act is a public welfare measure intended "to assure a measure of security against the hazard of unemployment in our economic life," it is liberally construed. Unemployment Compensation Comm'n v. Collins, 182 Va. 426, 438, 29 S.E.2d 388, 393 (1944). In accordance with this rule of construction, employment is found to exist in "borderline cases," id., and "[e]xemptions in the Act should be strictly construed against the alleged employer." Virginia Employment Comm'n v. A.I.M. Corp., 225 Va. 338, 346, 302 S.E.2d 534, 539 (1983). Second, the statutory definition of employment under the Act is "broader and more inclusive than in the common-law context of master and servant." Id. (citing Life & Casualty Co., 178 Va. at 57, 16 S.E.2d at 361). Finally, whether a particular relationship constituted employment is determined more from the actual practice of the parties in their day-to-day interactions than by any formal understanding between them. Collins, 182 Va. at 434, 29 S.E.2d at 391. "[T]he individual's status in relation to the alleged employer is to be determined from all the facts and circumstances adduced by the evidence, including the provisions of any written agreement." A.I.M. Corp., 225 Va. at 347, 302 S.E.2d at 539.

10

B.

Turning to the facts of this case, we hold that the circuit court erred when it concluded that the evidence offered by Porter-Blaine was sufficient as a matter of law to prove that the service performed by the drywall installers fell outside the statutory definition of "employment." Specifically, Porter-Blaine's evidence did not prove that the work performed by the drywall installers was free from its control or direction. See Code § 60.2-212(C)(1).

In determining whether an alleged employer has proven that an alleged employee is "free from control or direction" under Code § 60.2-212(C)(1), we consider whether the alleged employer had either "actual" or "potential" power of control over the performance of the services. A.I.M. Corp., 225 Va. at 347, 302 S.E.2d at 539-40. Under the statute, an alleged employer had the "right of control" and an alleged employee was not "free" from control if the evidence regarding the parties' contract or their daily interactions indicates that the alleged employer had both (1) the power to specify the result to be accomplished and (2) power "over the performance" of the work. See id. at 347, 302 S.E.2d at 540 (quoting former version of Code § 60.2-212(C)(1)); see also Brothers Constr. Co. v. Virginia Employment Comm'n, 26 Va. App. 286, 295, 494 S.E.2d 478, 483 (1998). Because the result to be accomplished is specified in most contracts, the power over how the work is performed is frequently the

11

dispositive element.

> If the party for whom the work is to be done has the power to direct the means and methods by which the other does the work, an employer-employee relationship exists; if the latter is free to adopt such means and methods as he chooses to accomplish the result, he is not an employee but an independent contractor.

A.I.M. Corp., 225 Va. at 547, 302 S.E.2d at 540 (citing Richmond Newspapers, Inc. v. Gill, 224 Va. 92, 93, 294 S.E.2d 840, 843 (1982)). An alleged employee is not "free from control or direction over the performance of such services" if the record indicates that the alleged employer may instruct the alleged employee regarding the means and methods chosen to accomplish the result and such instructions "have to be obeyed." Id. at 547, 302 S.E.2d at 540 (citing Texas Co. v. Zeigler, 177 Va. 557, 565, 14 S.E.2d 704, 707 (1941)). Similarly, if the alleged employer had the power to discharge the alleged employee from its service because of disobedience, then the alleged employer had the legal right of control and the service is "employment" under the statute. See Zeigler, 177 Va. at 569, 14 S.E.2d at 709 (citation omitted).

The evidence offered by Porter-Blaine was insufficient as a matter of law to prove that it was completely without power to designate the manner in which the drywall installers performed their work. Although Samuel L. Porter, the president of Porter-Blaine, testified that Porter-Blaine had no "right to direct the manner or the [means] in which the [drywall installer]

12

performs his services," the evidence in the record regarding the day-to-day interactions between Porter-Blaine and the drywall installers proved otherwise. The Commission expressly found that Porter-Blaine possessed the right to terminate the services of drywall installers "at will," and the evidence in the record, when viewed in the light most favorable to the Commission, is sufficient to support this finding. Porter testified that Porter-Blaine told at least one drywall installer that "he didn't . . . need [to] finish" a particular project because he "wasn't doing a good job." Because, in practice, Porter-Blaine had the potential right to discharge installers for disobedience with the company's standards while work was in progress, it legally had the "right to control" the performance of the drywall installers' work. See Zeigler, 177 Va. at 569, 14 S.E.2d at 709.

On the issue of control, this case is virtually indistinguishable from Brothers Constr. Co., a case decided after the circuit court reviewed the Commission's decision in this case. Like the alleged employer in Brothers Constr. Co., Porter-Blaine had the power to terminate the drywall installers at will, dictated the materials they used, and retained authority after the job was finished to scrutinize the quality of the work and require improvements. See Brothers Constr. Co., 26 Va. App. at 296, 291, 494 S.E.2d at 483, 481 (applying Code § 60.2-212(C) to arrangements between a company who obtained contracts to install siding on buildings and "siding installers" who performed

13

the actual installation).  The dispositive element in both of these cases is the potential power to terminate the installers prior to the completion of the work that was the subject of the parties' contract, which is a mechanism that has the effect of regulating the performance of the installers' work.  As the Supreme Court stated in Zeigler, "'[the] power of discharge made obligatory any instructions given, for it gave to [the employer] the power to require obedience to those instructions and insured their being carried out.'"  See Zeigler, 177 Va. at 565, 14 S.E.2d at 707 (citations omitted).

Because Porter-Blaine failed to prove as a matter of law that the drywall installers were "free from [its] control or direction," the service performed by these installers was within the Act's definition of employment, and Porter-Blaine was required to pay taxes on the remuneration it paid to them.  For this reason, we need not consider whether Porter-Blaine proved that these installers were independently established businesses under Code § 60.2-212(C)(2).

For the foregoing reasons, we reverse the order of the circuit court reversing the Commission's decision and remand for further proceedings consistent with this opinion.

                                        Reversed and remanded.

14