COURT OF APPEALS OF VIRGINIA


Present:  Judge Annunziata, Senior Judges Cole and Baker[*]
Argued at Richmond, Virginia


YARD BIRD, INC., T/A TZERS
                                           OPINION BY
v.   Record No. 2237-97-2         JUDGE MARVIN F. COLE
                                          AUGUST 18, 1998
VIRGINIA EMPLOYMENT COMMISSION


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Theodore J. Markow, Judge

          A. Robinson Winn (Outland, Gray, O'Keefe &
          Hubbard, on brief), for appellant.

          William A. Diamond, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Yard Bird, Inc., t/a Tzers ("Yard Bird"), appeals the

circuit court's order denying its petition for judicial review

and affirming the Virginia Employment Commission's ("VEC" or

"Commission") ruling that Jackie Pulliam and other exotic dancers

who perform for Yard Bird, are employees, not independent

contractors.  On cross-appeal, the VEC asserts that the circuit

court erred when it found that Pulliam and the other dancers were

free from Yard Bird's control.  For the reasons that follow, we

affirm in part and reverse in part.

                              I.

     On July 5, 1995, Jackie Pulliam, who formerly performed as

_____

[*]Judge Baker participated in the hearing and decision of
this case prior to the effective date of his retirement on July
31, 1998 and thereafter by his designation as senior judge
pursuant to Code § 17-116.01.

an exotic dancer for Yard Bird, filed for unemployment benefits and listed Yard Bird as one of her former employers. While processing Pulliam's claim, the VEC discovered that Yard Bird had not been paying unemployment taxes on Pulliam or any of its other dancers. Following an investigation, a VEC tax representative issued a letter opinion finding that the dancers were Yard Bird's employees. Yard Bird appealed this determination to the Commission. A VEC special examiner conducted a hearing on the matter and issued a decision affirming the earlier letter opinion.

The Commission found that Yard Bird operates a restaurant, bar, and lounge in Chesapeake, Virginia, where it engages approximately fourteen exotic dancers each day. Dancers were generally engaged by verbal agreement until September 1995, when Yard Bird began employing an "Independent Contractor Agreement." Prior to that, Yard Bird had, at least on occasion, utilized written employment applications. Yard Bird offered into evidence an employment application completed by Pulliam in July 1994, attached to which was a form indicating that Yard Bird considered the applicant-dancer to be an independent contractor.

Dancers are paid five dollars per twenty-minute set and work three sets per shift. Most of the dancers' income is derived from tips from patrons. Yard Bird prepares a schedule of available sets, and dancers call in to schedule their own performances on a first-come, first-served basis. Dancers are

not required to work a minimum number of hours each week and are not penalized for turning down work. The average dancer works fours hours per week for Yard Bird and is engaged there for approximately eight to ten weeks. Some dancers, however, will have as short a tenure as one week, and others will only work around the Christmas season in order to earn additional money for the holidays.

Dancers are not told by Yard Bird how to perform on stage but are required to comply with Virginia Alcoholic Beverage Control ("ABC") laws and regulations applicable to Yard Bird's licensing status. Yard Bird has authority to order a dancer from the stage during a set if the dancer violates an ABC regulation. On the advice of ABC, Yard Bird also requests that dancers not leave the building between sets, and the Commission found that Yard Bird "attempts to enforce such a rule." Yard Bird is a "pasties and t-bar" club, and dancers provide their own performance outfits.

Yard Bird owner Shirley Stephenson testified that dancers will frequently work at other clubs in the Tidewater area. Dancers generally have their own "business" cards listing their dance schedules. Yard Bird offered into evidence three such business cards and also submitted as evidence an application for business license for the City of Virginia Beach that had been completed by dancer Janet Taylor. Yard Bird began "requiring" its dancers to secure local business licenses in approximately

1995.  Nevertheless, Stephenson testified that she does not enforce this requirement and uses dancers who do not have business licenses.  The only evidence presented concerning details of the dancers' business activities outside of Yard Bird was an affidavit from one woman stating that she was "currently employed by more than one establishment in the Greater Tidewater area."

Dancers are told when they audition that Yard Bird does not withhold taxes from their earnings and that as soon as the dancers earn $600, they are issued 1099s.  The dancers are also required to fill out a form W-9 Request for Taxpayer Identification Number and Certification form.  This latter requirement is imposed by the Internal Revenue Service in connection with Yard Bird's use of 1099s.  In a 1995 opinion letter solicited by Yard Bird, an IRS group manager advised Yard Bird that the IRS considered certain Yard Bird workers to be employees, not independent contractors.[1]  The group manager explained, however, as follows:

> Section 530 of the Tax Reform Act of 1978 provides a safe haven for taxpayers who can show (1) judicial precedent, (2) prior audit by the IRS, or (3) industry practice.  Since you meet the requirements of Section 530, we will not change the way you report the earnings of the below mentioned worker[s].

---

[1]Although the letter is silent on the jobs performed by the workers, Yard Bird presents the letter as an opinion on the employment status of its dancers.  The VEC does not challenge this assertion, and we will assume that the letter does indeed refer to Yard Bird's dancers.

The dancers generally use their residential addresses for these tax forms and their business licenses.

The special examiner ruled that Pulliam and the other dancers were employees, not independent contractors. The special examiner held that Yard Bird had not met its burden of proving it did not exert control over the dancers and had not proved the dancers were engaged in independently established businesses. The Commission further rejected Yard Bird's argument that the "safe haven" granted Yard Bird by the IRS was binding on the VEC, or at least should be dispositively persuasive.

Yard Bird filed a timely petition for judicial review with the circuit court. The circuit court disagreed with the Commission on the issue of control, but it concurred that the dancers were not engaged in independent businesses. The circuit court also rejected Yard Bird's "safe haven" argument.

## II.

"Initially, we note that in any judicial proceedings `the findings of the commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.'" Israel v. Virginia Employment Comm'n, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988) (citation omitted). In accord with our usual standard of review, we "consider the evidence in the light most favorable to the finding by the Commission." Virginia Employment Comm'n v. Peninsula Emergency Physicians,

Inc., 4 Va. App. 621, 626, 359 S.E.2d 552, 554 (1987).

Our review of questions of law on the definition of "employment" is guided by the following:

> The meaning of "employment" in the unemployment compensation context is controlled by statute. . . . The Act is to be liberally construed to effect its beneficent purpose and in borderline cases "employment" should be found to exist. Exemptions in the Act should be strictly construed against the alleged employer, the rule requiring liberal construction in favor of the taxpayer not being applicable. As defined in the Act, the term "employment" should be accorded a broader and more inclusive meaning than in the common-law context of master and servant.

Virginia Employment Comm'n v. A.I.M. Corp., 225 Va. 338, 345-46, 302 S.E.2d 534, 539 (1983) (citations omitted). Employment, in the context of unemployment compensation and taxation, is defined by Code § 60.2-212(C) as follows:

> Services performed by an individual for remuneration shall be deemed to be employment subject to this title unless:
>
> 1. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and
>
> 2. Such . . . individual, in the performance of such service, is engaged in an independently established trade, occupation, profession or business.

The VEC has the initial burden of proving that the services are performed by individuals for remuneration;[2] however, once the

---

[2]Yard Bird concedes that the dancers perform services for remuneration.

VEC has met its burden, the burden shifts to the putative employer to prove, by a preponderance of the evidence, that it qualifies for an exemption under Code § 60.2-212(C).  See Virginia Employment Comm'n v. Thomas Regional Directory, Inc., 13 Va. App. 610, 612, 414 S.E.2d 412, 414 (1992).  If the employer does not meet its burden of proof, then an employment relationship will be found to exist.  See id.  Further, "the failure to produce evidence on a factor is held against the party having the burden of proof, not against the party that does not have the burden of proof."  Id. at 616, 414 S.E.2d at 416.

III.

"The power of control is the most significant indicium of the employment relationship . . . ."  Richmond Newspapers, Inc. v. Gill, 224 Va. 92, 98, 294 S.E.2d 840, 843 (1982).  We look not only to actual control but also the potential control an alleged employer can exert over the putative employee.  See Thomas Regional Directory, 13 Va. App. at 614, 414 S.E.2d at 416. "[T]he individual's status in relation to the alleged employer is to be determined from all the facts and circumstances adduced by the evidence, including[, but not limited to,] the provisions of any written agreement."  A.I.M. Corp., 225 Va. at 347, 302 S.E.2d at 539.

The power of control includes not only the power to specify the result to be accomplished but also to control the manner in which the service is performed.  See id. at 347, 302 S.E.2d at

540.  In determining "whether a right to control exists, a court must determine whether instructions have to be obeyed by an individual and whether either party has the right to terminate services at will without incurring liability to the other party."  Thomas Regional Directory, 13 Va. App. at 614, 414 S.E.2d at 416.  "[I]f the alleged employer [has] the power to discharge the alleged employee from its service because of disobedience, then the alleged employer [has] the right to control and the service is 'employment' under the statute."  Virginia Employment Comm'n v. Porter-Blaine Corp., 27 Va. App. 153, 164, 497 S.E.2d 889, 895 (1998).

Yard Bird attempts to enforce its rule that dancers not leave the premises between sets.  While the dancers are responsible for providing their own costumes, the fact that Yard Bird is a "pasties and t-bar" establishment, as a practical matter, places significant limits on the dancers' discretion in choosing a costume.  The dancers may choose the times they work but only in conformity with the schedule established by Yard Bird.  See Cy Investment, Inc. v. National Council on Compensation Ins., 876 P.2d 805, 807 (Or. App. 1994) (factors indicating control include defining the length of a dancer's shift).  Finally, Yard Bird requires dancers to comply with ABC laws and regulations that govern Yard Bird's licensing status.

Yard Bird also failed to prove it could not terminate the services of any of the dancers at will.  The "Independent

Contractor Agreement" was silent on this matter, and Stephenson conceded she could not envision a situation where she would sue a dancer for leaving Yard Bird.  The agreement sets no limits on how long the dancers will perform for Yard Bird and guarantees them no minimum amount of service.  Stephenson also indicated she could order a dancer from the stage, mid-performance, if she felt the dancer had committed an act of lewdness or disorderly conduct.  While dancers are paid a flat rate for dancing, they are paid for a set of fixed duration.  For all intents and purposes, therefore, this payment constitutes a guaranteed hourly rate of pay.  Cf. Elizabeth River Tunnel District v. Beecher, 202 Va. 452, 459, 117 S.E.2d 685, 691 (1961) (the existence of an agreement providing for the performance of a job at a fixed price is indicative of independent contractor status).

The evidence proved that, in several significant aspects, Yard Bird exercised actual or potential control over the dancers.  Accordingly, based on the totality of the circumstances, including the "Independent Contractor Agreement," we hold that Yard Bird failed to meet its burden of proving that Pulliam and the other dancers were free from its control.

IV.

Even were we to hold that the dancers were free from Yard Bird's control, Yard Bird still had the burden of proving that the dancers were engaged in independently established businesses in order to be exempt from paying unemployment taxes on them.

See Code § 60.2-212(C)(2).

"[I]t is elemental that one engaged in an independent enterprise, business or profession has a proprietary interest therein to the extent that he can operate it without hindrance from any individual or force whatsoever." Life & Casualty Ins. Co. v. Unemployment Compensation Comm'n, 178 Va. 46, 55-56, 16 S.E.2d 357, 361 (1941). Furthermore, the alleged employer has the burden of proving that the putative employee's business is independently established. See Thomas Regional Directory, 13 Va. App. at 615, 414 S.E.2d at 416. "An [independently] 'established' business is one that is permanent, fixed, stable, or lasting." Unemployment Compensation Comm'n v. Collins, 182 Va. 426, 437, 29 S.E.2d 388, 393 (1944).

Yard Bird failed to present sufficient evidence proving that any of the dancers were engaged in "permanent, fixed, stable, or lasting" business enterprises. Some dancers will dance at Yard Bird for only a week; others will dance only during the holiday season to earn additional money for Christmas. The average dancer stays at Yard Bird for eight to ten weeks. Little evidence was presented as to how long dancers continue in the "business" of exotic dancing after leaving Yard Bird. The evidence suggests that the exotic dancing "enterprises" of Yard Bird's dancers are temporary and short-lived.

Yard Bird presented only one business license and three "business" cards in support of its position that the dancers are

independent contractors. Yard Bird's owner conceded that, although the "Independent Contractor Agreement" indicates the dancers must have business licenses, not all of the dancers have licenses and this "requirement" is not enforced. While business licenses and business cards are both indicia of independently established businesses, the fact that an individual has a business license and a business card is not dispositive. This conclusion is especially true where the worker obtains the business license only at the request of the putative employer.

The evidence that the dancers perform at other clubs does not conclusively prove they are engaged in independently established businesses. The other clubs might treat the dancers as employees. Yard Bird presented a single affidavit from one dancer to corroborate Stephenson's testimony regarding the dancers' activities outside of Yard Bird. Moreover, the affidavit suggested the dancer was not an independent contractor because she indicated she was "employed" by more than one establishment. The fact that a person may work several part-time jobs, even in the same industry, does not necessarily make him or her an independent contractor.

Finally, the fact that Yard Bird issues 1099s to its dancers is largely immaterial under the circumstances. Yard Bird's own evidence proved that the IRS allows the dancers to be considered as independent contractors merely because of a special exemption in the tax code. The IRS specifically found that it considered

the dancers to be employees.

Accordingly, Yard Bird's evidence falls short of proving that the dancers were engaged in independently established businesses.

V.

"[T]he fact that an exemption [from employment] may exist under federal law is not determinative of whether an exemption exists under the Virginia [Unemployment Compensation] Act." Peninsula Emergency Physicians, 4 Va. App. at 627, 359 S.E.2d at 555. We are governed by the definition of "employment" contained in Code § 60.2-212. Accordingly, we reject the contention that we are, or should be, bound by the "safe haven" granted to Yard Bird by the IRS.

VI.

For the reasons stated above, we hold that Pulliam and the other dancers were under the control and direction of Yard Bird, that they were not engaged in independently established businesses, and that the VEC correctly determined they were employees. Accordingly, we reverse the circuit court's judgment that the dancers were free from Yard Bird's control, but we affirm its ruling that the dancers were employees. The matter is remanded for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.

- 12 -